PEOPLE v. HYDE.

(Supreme Court, Appellate Division, First Department. February, 16, 1912.)

1. CRIMINAL LAW (§ 126*)—CHANGE OF VENUE—GROUNDS.
    Under the express provisions of Code Cr. Proc. § 344, a defendant may move for a change of venue on the ground of local prejudice, and this is a substantial right.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 243; Dec. Dig. § 126.*]

2. CRIMINAL LAW (§ 126*)—CHANGE OF VENUE—LOCAL PREJUDICE.
    Motions for change of venue in criminal cases on the ground of local prejudice are to be determined by the application of judicial discretion to the facts in the case, and, if the court finds that in all probability an impartial trial cannot be had in the county where the indictment was pending, it should grant the motion.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 243; Dec. Dig. § 126.*]

3. CRIMINAL LAW (§ 134*)—CHANGE OF VENUE—IMPARTIAL TRIAL—EVIDENCE.
    On a motion for a change of venue on the ground of local prejudice, the accused relied principally on a large mass of newspaper clippings referring to him, some of which related to matters in which he was involved other than those covered by the indictment. It appeared, however, that, after the publication of a great many of these items, he had made three applications for a speedy trial in the county where he was indicted. Held, that the evidence was insufficient to show any widespread belief in accused's guilt; and the motion was properly denied.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 243–252; Dec. Dig. § 134.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Charles H. Hyde was indicted for bribery and for asking, receiving, and agreeing to receive a gratuity for the performance of an official act. From an order (133 N. Y. Supp. 306) denying a motion for a change of venue, he appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and MILLER, JJ.

John B. Stanchfield, for appellant.

Charles S. Whitman, Dist. Atty. (Robert C. Taylor, of counsel, and Robert S. Johnstone, on the brief), for the People.

CLARKE, J. On May 11, 1911, a superseding indictment was found by the grand jury of the county of New York charging the defendant, then chamberlain of the city of New York, with the crime of bribery in two counts, and in two further counts with the offense of asking, receiving, and agreeing to receive a gratuity for performing an official act. To this indictment he pleaded not guilty.

On June 5th the defendant made a motion before the April term continued of the Criminal Term of the Supreme Court to fix a day for trial which was opposed by the district attorney on the ground that the ends of justice required that the cases of People v. Reichmann and People v. Cummins, in which indictments had been found prior to that against the defendant, should be tried in the order stated and prior to the trial of the case against the defendant. The presiding justice denied the motion with leave to renew at the June Criminal Term. On June 7th the same motion was made before the June Term of the Criminal Term of the Supreme Court, and was opposed by the district attorney upon the same grounds and was also denied by the justice there presiding.

On June 15th the trial of People v. Reichmann began before the April Term, continued, and said Reichmann was found guilty on the 28th day of June. On the 29th of June the defendant moved before the June Term of the Criminal Term of the Supreme Court for an order transferring the indictment to the Court of General Sessions of the City and County of New York for trial. On the 13th of July, the justice there presiding granted the motion. Thereafter the district attorney served a notice of appeal from said order, and on the 15th of July an order was granted by the presiding justice of the Appellate Division staying the trial of said action until after the hearing and determination of the said appeal. On the 27th of July a motion was argued before the presiding justice for an order vacating said stay, which was denied. The appeal was dismissed by an order of this court on November 3, 1911, and on November 6th an order was made by the Supreme Court transferring the case for trial from the General Sessions back to the Supreme Court.

On October 17th the case of the People v. Cummins was brought on for trial in the Supreme Court, April Term, continued, and was continued until November 20th, on which day the jury found a verdict of guilty, and Cummins was sentenced on said verdict on the 24th of November. On said day the district attorney made a mo-

tion to have the case of the People v. Hyde set down for trial and fix a day therefor, and the court ordered that the case be set down for trial at the January term, and the 2d day of January, 1912, was fixed as the day therefor. On December 28, 1911, the district attorney served a notice of motion for a special jury, returnable at the Criminal Term of the Supreme Court on January 2, 1912.

On December 26, 1911, the defendant made a motion returnable at Special Term, Part 1, on January 5, 1912, for an order of removal of said criminal action to a term of the Supreme Court held in and for some other county in the state of New York upon the ground that a fair and impartial trial could not be had by said defendant in the county of New York. The said motion having been denied by the Special Term, the defendant appeals.

To sustain his claim that he cannot have a fair and impartial trial in the county of New York, the appellant has submitted voluminous affidavits and a large mass of newspaper clippings. The claim is made that the extensive publications in the public prints of articles referring to him have created such a prejudicial atmosphere in the community that a fair-minded jury cannot be impaneled to try him upon the indictment found against him; that the members of any jury impaneled for that purpose will be so affected that they will not observe the fundamental rules of law in a criminal case; that the defendant is presumed to be innocent until proved guilty; and that he is entitled to the benefit of a reasonable doubt upon every material point in the case.

[1] The defendant had a right to make this motion. It is expressly provided for in section 344 of the Code of Criminal Procedure. In People v. McLaughlin, 150 N. Y. 365, 44 N. E. 1017, the court said:

"The right to remove the place of trial from one county to another, where a fair and impartial trial cannot be had in the county where the indictment is pending, has long existed. It existed at common law, and was subsequently incorporated into the statutes of the state. The provisions of the Code of Criminal Procedure upon the subject have been evolved from previous legislation, and, so far as they extend, now contain the rule of law governing such an application. * * * That the right thus given is a substantial one and has always been regarded as of great importance to a defendant is manifest, not only from the time it has existed, but also from its paramount necessity to fairly protect his just rights and interests. The right of every person accused of crime to have a fair and impartial trial before an unbiased court and an unprejudiced jury is a fundamental principle of criminal jurisprudence."

[2] Whether or not the application should be granted is to be determined by the wise exercise of judicial discretion, and each case must be decided upon its own facts. Of course, there can be no certainty established in regard to such a future event. It is enough if the court can find that in all human probability such a condition exists. In People v. Georger, 109 App. Div. 111, 95 N. Y. Supp. 790, Mr. Presiding Justice McLennan said:

"Without going into detail as to the character of the opinion expressed, all to the effect that the defendant was culpable and wholly responsible for the difficulties in which the bank was involved, it is sufficient to say that by the quotations from the public press contained in the record, from the

opinions of parties interested, assembled to consider the situation, from the expression of citizens who met and casually discussed the matter, it would seem that the community was practically a unit in concluding that the defendant had been guilty of serious wrongdoing and which resulted in, or caused, the failure of the bank."

[3] If this court was satisfied that a fair and impartial jury could not be obtained in the county of New York to try the defendant upon the indictment found against him, "that the community was practically a unit in concluding" him guilty, it would be its duty—and it would not hesitate—to reverse the order appealed from, and grant the motion for a change of venue. But we reach no such conclusion upon this record. It is true that the defendant, by reason of his connection with public affairs, has had a mass of matter published about him in the public prints. He calls attention to numerous publications growing out of an investigation by a committee of the Legislature of charges of the raising of large sums of money to influence legislation respecting the race tracks, to the indictment and trial of a member of the Legislature who was acquitted upon such trial, and to the fact of defendant's absence from the city during the latter part of the period during which said legislative committee sat.

None of those matters had anything to do with the alleged misconduct for which he has been indicted, and said publications antedated the finding of said indictment. Notwithstanding the articles, cartoons, and poems, the insinuations, suggestions, and even abuse of which he complains relating to those matters as aforesaid, antedating the finding of the indictment, he made three applications in the summer of 1911 for a speedy trial in the county of New York, and succeeded in procuring a removal of the case to the Court of General Sessions in July, upon the ground that he was entitled to a speedy trial, and that the Supreme Court in which the indictment was pending would adjourn for the summer months, and as late as the 27th of July, 1911, he was urging the vacating of the stay which had been granted, in order to enable him to get a speedy trial in this county.

So that this court may fairly look at the precedent publications upon which he now relies to show a prejudiced public from which a fair jury could not be drawn in the same light that he did when strenuously insisting upon a speedy trial. We may with propriety, I think, confine our examination to matters occurring thereafter.

He alludes to the trials growing out of the failure of the Carnegie Trust Company. At the time he made his application for the transfer of the indictment to the General Sessions Reichmann had been tried. Only 62 talesmen were examined, and a jury was selected in less than one court day upon that trial. Upon the trial of Cummins only 165 talesmen were examined, and a jury was secured in less than three days. Defendant was not indicted for the crimes for which Reichmann and Cummins were convicted. He has been indicted for taking bribes or gratuities, as a public officer, to affect his official conduct.

There is little or no evidence of a widespread public belief of his guilt or innocence of the charge brought against him. Section 376, subd. 2, of the Code of Criminal Procedure, provides:

"But the previous expression or formation of an opinion or impression in reference to the guilt or innocence of the defendant, or a present opinion or impression in reference thereto, is not a sufficient ground of challenge for actual bias of any person legally qualified, if he declare on oath that he believes that such opinion or impression will not influence his verdict and that he can render an impartial verdict according to the evidence and the court is satisfied that he does not entertain such a present opinion or impression as would influence his verdict."

Impressions made by reading the newspapers are ephemeral, and jurors in this county have, in a number of notable cases, although surrounded by evidence of great popular feeling, not been swayed thereby. Considering the population of this county, our large general jury list, and our carefully selected special jury, we feel perfectly confident that it is not necessary to send this indictment for trial to any other county to enable the defendant to enjoy his undoubted right to a fair and impartial jury.

We have given the papers submitted careful and painstaking attention, and are satisfied that the learned Special Term correctly disposed of this motion, and that the order appealed from should be affirmed. All concur.