296 So.2d 755

**Buddy Herman MATHIS, alias**

v.

**STATE.**

I Div. 139.

Court of Criminal Appeals of Alabama.

Aug. 14, 1973.

Rehearing Denied Sept. 25, 1973.

Alvin M. Binder, Jackson, Miss., R. P. Denniston, Mobile, for appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

CATES, Presiding Judge.

False pretense: sentence, seven years imprisonment.

## I

August 17, 1969 a hurricane came ashore in Mobile County. The Board of School Commissioners awarded a cost plus contract for school repairs to Mathis without public bidding.

According to the tendencies of the State's evidence, Mathis, with (or at the instigation of) an employee of the Board submitted false invoices from subcontractors. It was inferable that Mathis and this employee advised certain subcontractors and materialmen who had either done little or no work on particular schools, to inflate their bills and kick back to Mathis and his accomplice. In at least one instance they got blank invoice forms of a subcontractor, filled them out, and ran them through the Board's fiscal machinery to their profit.

Mathis defended, essentially, on a lack of scienter. He was then being harassed by creditors in other undertakings. This financial distraction, he said, kept him from realizing that he was participating in a fraudulent scheme. Mathis claimed, for example, that he thought that he was giving a year's maintenance guaranty on the roofs of the schools involved.

The State, in rebuttal, countered the thrust of Mathis's testimony by producing the putative accomplice who testified that Mathis participated in the decision to make false invoices and send them to the Board as bills.

This witness (R. 1818) testified without objection that the change from billing for damaged schools to also billing for schools not damaged was prompted by greed, " * * * partly mine and partly Mr. Mathis's."

The conflict in the evidence was under our jurisprudence a classical case for the jury to resolve which they did with their verdict.

## II

This case is a companion case to 1 Div. 217. In that case there was a claim that

Mathis was awarded an earlier contract without competitive bids on the grounds of an emergency.

Thus, the hurricane having hit in August, by the 19th of December 1969 the Mobile Press Register reported an award of contracts without competitive bids on the grounds of an emergency. Then, on the 4th of January 1970 there was an editorial in the Mobile Press Register, the morning newspaper, entitled "Questions for Board." This editorial made no call for criminal proceedings, but rather raised questions as to the motivation for ignoring the competitive bid law. On the 7th of January the newspaper published an article entitled "Insurance Adjusters Probe School Hurricane Claims."

On April 10, 1970 a grand jury indicted Mathis. In the instant case the indictment alleged a false pretense made to the Board of School Commissioners, Mobile County, regarding the repair of fifty-nine school buildings, purportedly damaged by the August hurricane.

On May 21, 1970 Mathis filed a motion for change of venue, alleging among other grounds the undue publicity he claimed resulting from various newspaper articles.

Mathis filed two amendments to his motion for change of venue and also filed a motion for continuance setting forth virtually the same grounds as set out in the motion for change of venue. These motions were overruled by the court after a hearing prior to trial. This hearing embraced a wide range of evidence, including stipulations as to the number of listeners to various radio stations, the viewing area of various television stations, the opinion of different witnesses as to whether or not Mathis could receive a fair trial in Mobile County and matters of similar import. A motion for continuance, as well as a motion for change of venue were denied. (R. 203)

We have carefully reviewed the newspaper clippings which were sent up as exhib-

its in addition to the testimony appearing in the record. We have examined these under the strictures of the opinion of the Supreme Court of the United States in Sheppard v. Maxwell, 384 U.S. 333, 86 S. Ct. 1507, 16 L.Ed.2d 600, and under further consideration of the Standards of Criminal Justice enunciated by the American Bar Association. Thus, under the Standards entitled Fair Trial and Free Press, § 3.2 provides:

"Change of Venue or Continuance.

"It is recommended that the following standards be adopted in each jurisdiction to govern the consideration and disposition of a motion in a criminal case for change of venue or continuance based on a claim of threatened interference with a right to a fair trial.

"(a) Who may request.

"Except as federal or state constitutional provisions otherwise require, a change of venue or continuance may be granted on motion of either the prosecution or the defense.

"(b) Methods of proof.

"In addition to the testimony or affidavits of individuals in the community, which shall not be required as a condition to the granting of a motion for change of venue or continuance, qualified public opinion surveys shall be admissible as well as other materials having probative value.

"(c) Standards for granting motion.

"A motion for change of venue or continuance shall be granted whenever it is determined that because of the dissemination of potentially prejudicial material, there is a reasonable likelihood that in the absence of such relief, a fair trial cannot be had. This determination may be based on such evidence as qualified public opinion surveys or opinion testimony offered by individuals, or on the court's own evaluation of the nature, frequency, and timing of the material in-

volved. A showing of actual prejudice shall not be required.

"(d) Same; time of disposition.

"If a motion for change of venue or continuance is made prior to the impaneling of the jury, the motion shall be disposed of before impaneling. If such a motion is permitted to be made, or if reconsideration or review of a prior denial is sought, after the jury has been selected, the fact that a jury satisfying prevailing standards of acceptability has been selected shall not be controlling if the record shows that the criterion for the granting of relief set forth in subsection (c) has been met."

We believe that the newpaper publicity in this instance bears a notable distinction from that condemned in Sheppard v. Maxwell, supra, in that the writing in this case was based primarily upon what later developed to be the facts adduced in evidence. In other words, the writing was more or less objective in the light of the testimony developed at trial. It was reasonably free from any calls for action based on emotional subjective judgments.

There was relatively little publicity involving the defense attorney or the prosecution attorney except for some references to a political campaign engaged in by the District Attorney in which his opponent was one of the Public Defenders who later, upon successful election, prosecuted Mathis in the trial of the companion case, Mathis v. State, 52 Ala.App. 674, 296 So. 2d 760. This publicity in nowise was to the prejudice of Mr. Mathis. Moreover, we would note that the trial of both of these cases was postponed from the call of the criminal docket immediately following the indictment until, in this case, the 9th of December 1970.

Thus, with respect to objective reporting we find the Court of Appeals of New York in People v. Di Piazza, 24 N.Y.2d 342, 300 N.Y.S.2d 545, 248 N.E.2d 412 saying:

" * * * Whether or not a change of venue should be granted rests in the sound discretion of the trial court (see, e. g., People v. Buchalter, 289 N.Y. 244, 45 N.E.2d 425; People v. Hyde, 149 App.Div. 131, 134, 133 N.Y.S. 780, *supra*), and a number of cases have held that newspaper comment alone, even though extensive, 'does not establish inability to get a fair trial.' (People v. Broady, 195 Misc. 349, 350, 90 N.Y.S.2d 864; see People v. Hyde, 149 App.Div. 131, 133 N.Y.S. 780, *supra*.) Moreover, the court's discretion will not be disturbed unless the newspaper articles are of such a sensational character as to excite local popular passion and prejudice so that the defendant will not be able to have the fair trial to which he is entitled.

"In the case before us, there was no such proof of passion or prejudice. Although the community was small and the defendant's crime and the events leading up to it widely known, the pretrial newspaper accounts were surprisingly objective. The victim's funeral and the members of her family were sympathetically portrayed and the defendant's action was described as having caused a widespread reaction and aroused deep feeling. But there was very little written that could be said to be affirmatively hostile to him. * * *"

To establish a basis for a Common Law inductive analogy we turn to Maine v. Superior Court, 68 Cal.2d 375, 66 Cal.Rptr. 724, 438 P.2d 372. From the opinion we excerpt:

"In the case at bench petitioners are accused of crimes of the gravest consequence. They are strangers to Ukiah, a small community where they have been held for trial. On the other hand, the two victims, a popular teenage couple from respected families in the area, were assaulted under circumstances that would compel any community's shock and indignation. * * *

"One of the victims, the girl, was discovered on a public road nearly unconscious with bullet wounds about her neck

and head. Her condition was critical and several complicated operations were performed to save her life. Local citizens immediately organized a fund to help the girl's parents defray the medical expenses, and the Ukiah Daily Journal, the local newspaper urged every citizen to contribute. It is no small measure of the community's laudable warmth and generosity that a substantial sum was quickly raised, mostly in modest contributions. We do not hold it to be an invariable rule that sympathy for a victim demonstrates antipathy to the alleged perpetrators of an offense. But such pervasive civic involvement in the fate of a victim, particularly when the events all transpire in a relatively small community, is a strong indication that the venue should be changed."

\*   \*   \*   \*   \*   \*

" \* \* \* Principally at fault appears to be an official of the State of Washington, where petitioners are also charged with murder, who revealed that one of the petitioners had confessed and placed full responsibility on the other for the crimes. This disclosure received substantial attention in the local newspaper, and it is undoubted that the existence of a confession is now common knowledge in the community. The admissibility of the confession into evidence has not been tested in a judicial hearing, however and its premature release must be regarded as potentially prejudicial to petitioners. When such a disclosure occurs in a small community, the only effective remedy, if the defense so requests, is to change the venue. Indeed, failure to seek a change of venue may suggest to a reviewing court on appeal that no prejudice was suffered by the defendant. \* \* \* "

\*   \*   \*   \*   \*   \*

" \* \* \* While a lengthy continuance might sufficiently protect the accused in some cases, it does not do so here. Delays may be an efficacious antidote to publicity in medium-size and large cities, but in small communities, where a major crime becomes embedded in the public consciousness, their effectiveness is greatly diminished. (See Friendly and Goldfarb, Crime and Publicity (1967), p. 79.) \* \* \* "

And we note in United States v. Halfen, 467 F.2d 127 (5 Cir. 1972), that the Circuit Court made this observation:

" \* \* \* Our examination of this record, moreover, compels the conclusion that there was no such prejudicial publicity as to constitute a denial of constitutional rights. The adverse publicity in this case consisted largely of several references to the appellant in a San Antonio newspaper, linking him with the Mafia. There was no such 'saturation of publicity' as was present in those cases which have found denials of the right to a fair trial due to prejudicial publicity. *See, e. g.,* Sheppard v. Maxwell, 1966, 384 U.S. 333, 86 S.Ct. 1507, 16 L. Ed.2d 600; Williams v. Dutton, 5th Cir. 1968, 400 F.2d 797, cert. denied, 1969, 393 U.S. 1105, 89 S.Ct. 908, 21 L.Ed.2d 799."

In *Maine,* supra, and *Di Piazza,* supra, both courts adverted, among other things, to the impact of publicity in a thinly populated county as contrasted with the more rapid dissipation in a metropolitan area. This reference seems to rely on the observation that a pebble's ripples are relatively less on a big pond than on a small one.

■ Here the venue was Mobile County, the second most populous in the State, with 317,308 inhabitants at the 1970 census. Adjoining is Baldwin with nearly 60,000 people. By our standards this is a metropolitan area. We consider the dissipation factor of publicity or its evanescence in a metropolitan area to be a phenomenon which a trial judge may reasonably bear in mind when weighing a motion for a change of venue. See Beddow v. State, 39 Ala.App. 29, 96 So.2d 175.

■ Moreover, the existence of widespread publicity alone does not indicate

that a defendant will not get a fair trial. The law focuses on the impartiality of the trial jury. Mathis v. State, 280 Ala. 16, 189 So.2d 564; Beecher v. State, 288 Ala. 1, 256 So.2d 154.

Here the voir dire of the jurors—mostly about the effect of publicity—took up several hundred pages of the court reporter's transcript.

As we ourselves observed in Dannelly v. State, 47 Ala.App. 363, 254 So.2d 434, the matter of publicity is sometimes not remediable by a change to the next county, but may have to be solved by way of a continuance so that the ripples of the publicity die down.

In this case we think the delay from the spring of 1970 until late autumn, in the absence of further proof from that shown in the instant record did not support the defendant's motion for either a further continuance or a change of venue.

We believe that in the nature of his crime some publicity was inevitable as a consequence. Realistically, the open conduct of public affairs is a matter on which Mathis could not rely to avoid being tried for a false pretense to a public body.

Having elected to do business with the school board, which he, of course, is presumed to know, (and did in fact indicate that he knew) was a public body, Mathis is in no position to say that these are covert private affairs like Swiss bank accounts.

Newspapers are entitled to examine what went on at the school board. So long as the reporting is factual and objective, then there can be no complaint because of an incidental exposure. The exposure was corroborated in this instance by the evidence.

There was no undue call for a witch hunt or any strong or unusual punishment in any of the articles or editorials which were submitted to us. There were no calls for mob action, such as we find in some of the opinions of the Supreme Court as having vitiating influence on verdicts. Altogether the reporting was essentially truthful. While it might have related the two cases as intertwined, these actions were of a common pattern and therefore, while properly not submitted to the same jury, nevertheless, to put them together into the newspapers was not, in our opinion, prejudicial.

### III

We have examined the entire record under Code 1940, T. 15, § 389 and consider that the judgment below is due to be

Affirmed.

CATES, P. J., and ALMON and De-CARLO, JJ., concur.

HARRIS, J., concurs in result.

TYSON, J., not sitting.