278 So.2d 210

Franklin Delano ACOFF

v.

STATE.

2 Div. 79.

Court of Criminal Appeals of Alabama.

May 15, 1973.

Demetrius C. Newton, Birmingham, Jack Greenberg and Elaine R. Jones, New York City, for appellant.

William. J. Baxley, Atty. Gen., and J. Knox Argo, Sp. Asst. Atty. Gen., Montgomery, for the State.

TYSON, Judge.

The Grand Jury of Dallas County, Alabama, indicted the appellant for the first degree murder of one Betty Joyce Castleberry by shooting her with a pistol. Following the lengthy trial, the Jury's verdict found the appellant guilty as charged and fixed punishment at death in the electric chair. Judgment set sentence in accordance with the verdict, and the appellant's motion for a new trial was duly overruled.

The following affidavit was given to B. M. Miller Childers, Judge of the Dallas County Court, on January 13, 1971, by Mrs. Gracie Howard, one of the two victims of an assault which occurred during the early morning hours, between four and five o'clock, of January 10, 1971. The affidavit is as follows:

"AFFIDAVIT

"STATE OF ALABAMA  
COUNTY OF DALLAS

State of Alabama  
vs.  
Franklin Delano Acoff

"Before me, B. M. Miller Childers, Judge of the Dallas County Court of Dallas County, Alabama, personally appeared Gracie Popwell Howard, who being known to me or made known to me, duly sworn, deposes and says that on the morning of January 10, 1971, Betty Joyce Castleberry and myself, Gracie Popwell Howard, were forcibly taken from the R & R Grocery, located on Highway 80 East, Selma, Dallas County, Alabama, by Franklin Delano Acoff, a black male, at gunpoint to a secluded area near the L & N Railroad trussel and at a point between such trussel and the Edmond Pettus Bridge on the South side of the Alabama River, and there, between the hours of four o'clock a. m. and seven o'clock a. m. on said Sunday morning, the said Franklin Delano Acoff did forcibly rape both myself and Betty Joyce Castleberry; and also shot and injured Betty Joyce Castleberry, who died as a result of such injuries; and also shot and injured myself. Franklin Delano Acoff then took from the possession of Betty Joyce Castleberry and myself the following personal property: one (1) keychain which has a square yellow gold locket with a heart and an arrow through the heart on front of locket, and inside the locket there is a picture of myself and my late husband, a fingernail file and knife blade combination and one ·(1) automobile ignition key to my automobile; and one (1) blue Scripto butane cigarette lighter; one (1) yellow handled pocket knife; and approximately $3.00 in currency and change from my pocketbook.

"The said Franklin Delano Acoff was wearing a dark jacket with a zipper in the front and dark trousers.

"s/ Gracie Howard
      GRACIE POPWELL HOWARD
"Sworn to before me and subscribed in my presence, this the 13th day of January, 1971.

"s/ B. M. Miller Childers
      JUDGE OF THE DALLAS
      COUNTY COURT

Further, at trial, Mrs. Howard testified that following the rape, shooting, and robbery, as above described, the appellant came back to the car and upon being unable to get back in as she had then locked the doors, he struck matches and threw them into the vehicle, setting fire to both women's hair. Mrs. Howard further testified that both she and Mrs. Castleberry had been employed as waitresses at the NCO Club at Craig Air Force Base, and after leaving the club at about 2:00 a. m., they had stopped at a local establishment where they had drunk beer, and upon driving to the front of the R & R Grocery, where they had stopped to use a pay telephone, they were accosted by the appellant at gunpoint.

The appellant's version of the facts were that he knew Mrs. Howard, and in fact had had several dates with her, and that she had come to his apartment on more than one occasion where they had had sex relations previously. Appellant further testified that he did go with the women on the morning in question to the Edmond Pettus Bridge and there had sex relations voluntarily with Mrs. Howard, and as Mrs. Castleberry awoke from an alcoholic stupor, she exclaimed that she would expose the two of them, that Mrs. Howard then pulled out a .32 caliber pistol and as they struggled over it, the gun fired accidently, with the shots striking the victim, Mrs. Castleberry. He testified that he left and denied throwing any lighted matches in the car or setting the women's hair on fire.

On January 14, 1971, the Assistant Executive Director of the Selma Housing Authority, Mr. John H. Kincey, gave the following affidavit before B. M. Miller Childers, Judge of the Dallas County Court:

"AFFIDAVIT

"STATE OF ALABAMA ⎱
                    ⎰
COUNTY OF DALLAS ⎱

State of Alabama
vs.
Franklin Delano Acoff

"Before me, B. M. Miller Childers, Judge of the Dallas County Court, Dallas County, Alabama, personally appeared John H. Kincey, Assistant Executive Director of the Selma Housing Authority, Selma, Alabama, who is known to me, being duly sworn, deposes and says that I am the Assistant Executive Director of the Selma Housing Authority, Selma, Alabama, and I have personal knowledge and personal access to the official records of such housing authority. The City of Selma, with whom I am employed, owns the N.B.F. Homes, a housing project located in Dallas County, Alabama. We rent apartments primarily to enlisted personnel stationed at Craig Air Force Base. However, there are instances in which we rent to civilians who are employed at Craig Air Force Base and others. I have personal knowledge of the fact that Franklin Delano Acoff resides in Apartment 48 AL, N.B.F. Homes. This is a duplex apartment. 48 designates the number of the apartment, A represents that such apartment is a one (1) bedroom apartment, and L represents that such apartment is located on the left hand side of the duplex. I have attached herewith a diagram of N.B.F.

Homes and make a part hereof as fully and completely as if set out herein in full with leave of reference as may be desired; and have marked on such diagram the premises known as 48 AL, being the residence of Franklin Delano Acoff.

"s/ John H. Kincey
JOHN H. KINCEY

"Sworn to before me and subscribed in my presence, this the 14th day of January, 1971.

"s/ B. M. Miller Childers
JUDGE OF THE DALLAS COUNTY COURT"

There is attached to Mr. Kincey's affidavit a diagram of the Nathan B. Forrest Homes, Selma, Alabama, being Housing Project No. Ala. 8–1R, which shows the location of the apartment being rented by the appellant at the time of the incident in question, an airman stationed at Craig Air Force Base.

Based on the two affidavits, as herein set forth, Wilson Baker, Sheriff of Dallas County, Alabama, also on January 14, 1971, made the following affidavit before Judge B. M. Miller Childers, Judge of the Dallas County Court:

"AFFIDAVIT FOR SEARCH WARRANT

"STATE OF ALABAMA ⎫
⎬
COUNTY OF DALLAS ⎭

State of Alabama
vs.
Franklin Delano Acoff

———◆———

"Before me, B. M. Miller Childers, Judge of the Dallas County Court, the undersigned, Wilson Baker, Sheriff of Dallas County, Alabama, who is known to me, being duly sworn, deposes and says that there are now being concealed certain property at the residence of Franklin Delano Acoff, located at 48 AL, N.B.F. Homes, also known as Nathan B. Forrest Homes, Highway 80 East, Selma, Alabama, approximately four (4) miles from the Edmund Pettus Bridge, a diagram of N.B.F. Homes, also known as Nathan B. Forrest Homes, is hereto attached and is made a part hereof as fully and completely as if set out herein in full with leave of reference as may be desired;

"There is now being concealed certain property, namely, one (1) chain type key chain which has a square yellow gold locket with a heart and an arrow through the heart on front of locket, and inside the locket there is a picture of Gracie Howard and her late husband, a fingernail file and knife blade combination, one (1) automobile ignition key,

one (1) blue Scripto butane cigarette lighter, yellow handled pocket knife, approximately three inches long, believed to have two blades, one (1) .32 Caliber pistol, .32 Caliber ammunition, and one (1) dark jacket and dark trousers and underclothes, which constitutes legal evidence pertaining to Murder in the First Degree, Rape, Robbery, Assault with Intent to Murder, and, that the facts tending to establish the foregoing grounds for issuing a search warrant are as follows:

"The information which I received from Gracie Popwell Howard and which is contained and set out in the affidavit of Gracie Popwell Howard which is attached hereto and is made a part hereof as fully and completely as if set out herein in full with leave of reference as may be desired; information which I received from John H. Kincey and which is contained and set out in the affidavit of John H. Kincey which is attached hereto and is made a part hereof as fully and completely as if set out herein in

full with leave of reference as may be desired; and information received from James Small, a toxicologist of the State of Alabama, who performed an autopsy on the body of Betty Joyce Castleberry and informed me that the death of Betty Joyce Castleberry was caused from gunshot wounds to the body inflicted by a .32 Caliber pistol.

"s/ Wilson Baker

WILSON BAKER, Sheriff
of Dallas County

"Sworn to before me, and subscribed in my presence, the 14th day of January, 1971.

"s/ B. M. Miller Childers

JUDGE OF THE DALLAS
COUNTY COURT"

Based on these affidavits, Judge Childers then issued a warrant authorizing a search of the apartment located at 48 AL Nathan B. Forrest Homes, Highway East, Selma, Alabama, and the search of the appellant's apartment was conducted at 12:23 o'clock in the early afternoon on January 14, 1971, by Captain Painter, Lieutenant Taylor, and Investigator John Cloud of the Alabama State Department of Public Safety, accompanied by Lieutenant James Foster of the Selma Police Department. Copies of the warrants had been served on the appellant and his wife, along with the Director of the Selma Housing Authority.

The following property was taken pursuant to the warrant, as shown by the return:

"(1) One (1) pair of jockey shorts, white in color, made by Hanes, size, 32.

"(2) One (1) .32 Caliber pistol, six (6) shot, serial number not listed, brown plastic grips, four (4) live rounds of ammunition.

"(3) One (1) jacket, man's, dark blue in color, gold lining, nylon.

"(4) One (1) pair of jockey shorts, white in color, made by Hanes, size, 30.

"(5) One (1) pair of men's trousers, dark blue in color, size, 32 inch waist, brand name 'Rivco.'

"(6) One (1) blue Scripto butane cigarette lighter.

"(7) One (1) automobile ignition key."

At trial, the State offered in evidence the .32 caliber pistol, the automobile ignition key, the Scripto butane cigarette lighter, and several rounds of ammunition as found in appellant's apartment.

I

Prior to trial, appellant's counsel moved to quash the indictment against him based on the alleged systematic exclusion of black persons from the jury rolls of the grand and petit juries of Dallas County, Alabama. At hearing, in support of this motion, the appellant offered in evidence the complaint, and affidavit, pleadings and orders entered by the United States District Court for the Southern District of Alabama in the case of Reese et al. v. Cobb et al., Civil Action No. 3839.65, wherein the United States District Court had determined that the jury roll of Dallas County did in fact exclude persons of the black race and directed that the members of the Jury Commission should select a new jury roll, comprised of not less than 3500 persons who met the qualifications prescribed by law, and that such roll should be refilled each two years thereafter, also by persons possessing the qualifications prescribed by law of the State of Alabama, as more fully set forth in Title 30, Section 21, Code of Alabama 1940, and the United States District Court did further direct that reports be filed with the United States District Court by the jury commissioners as to their action pursuant to the decree rendered by Judge Daniel H.

Thomas on September 7, 1968.[1] Appellant's counsel argued and sought to establish that no additional reports had been made beyond certain preliminary reports filed with the United States District Court as required by the decree, as above mentioned, which it being the appellant's position that because of the failure to continue to file reports that the orders of the United States District Court were not fully being complied with.

The State of Alabama countered this by showing, through the testimony of attorneys for the Jury Commission and members of the Jury Commission itself, that the Commission in fact had made reports directly to Judge Thomas, and that they had been found in initial compliance with his orders, and that Judge Thomas had advised the attorneys for all parties involved in the proceedings to avail themselves of the opportunity to inspect the jury roll and file any objection with the Court; that no additional objections had been filed after the initial establishment of a new jury roll, and that moreover, State Circuit Judge, L. S. Moore, as Judge of the Fourth Judicial Circuit of Alabama, did further direct the Jury Commission of Dallas County, Alabama, to make an additional report, and that under date of July 28, 1970; Judge L. S. Moore had received and approved the additional report of the members of the Jury Commission of Dallas County, Alabama. Members of the Jury Commission testified that they selected names of persons to be placed on the jury rolls from voter lists, tax assessment lists, names furnished through membership in business, church, and civic organizations, and, further, by visits made by members of the Jury Commission themselves to a number of communities throughout Dallas County, Alabama, including visits to sections of the county where members of the black race resided, and that this was the basis from which the names were placed upon the jury roll.

In denying the appellant's motion, the Circuit Court of Dallas County, Alabama, in its order dated May 25, 1971, made the following findings:

"The Court finds further from the evidence that under date of August 17, 1970, a new Grand Jury was impanelled by this Court from the venire which was summoned for jury service on that date; that the drawing and impaneling of this Grand Jury was done according to law and that said Grand Jury was impanelled by the following procedure: That the cards containing the names of all venire found to be qualified by the Court for jury service were shuffled, placed in a hat and a handkerchief placed over the hat and the cards drawn one at a time from the hat by the Judge presiding. That as each name was drawn, that person's name was read from the card and he was directed to take his place in the jury box.

"The Court finds further from the evidence that upon the impaneling of this particular Grand Jury, the racial makeup of this Grand Jury was determined to be ten Negroes and eight Whites.

"The Court further finds from the evidence that one additional Grand Jury has been drawn from the present jury box as now constituted; said Grand Jury being drawn on January 25, 1971; that the same procedure as hereinabove described was used in drawing and impaneling the present Grand Jury and that upon impaneling said Grand Jury, the racial makeup of said Grand Jury from the evidence adduced in Court on this date was three blacks, fifteen whites and the Court having considered all the foregoing, the Court is of the opinion that the Jury Commission of Dallas County, Alabama, as in compliance with the Order of Honorable Daniel H. Thomas, dated September 2, 1968, and the Order of L. S. Moore, dated May 6, 1970, with the

---

1. Evidence introduced at the hearing further established that the United States District Court no longer carried this case in its "active" files.

exception that said Jury Commission has failed to submit reports as directed in Paragraph three of Judge Thomas' Order as aforesaid, but it is the finding of this Court that this matter should be left to the discretion of the United States District Court for such action as he may see fit to take. It is, therefore,

"ORDERED AND ADJUDGED by the Court that the Motion to Quash the Indictment heretofore filed in this cause be and the same is hereby overruled and denied.

"Done this 25th day of May, 1971."

As was stated in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759:

"Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group."

■ This Court is of the opinion that the appellant's motion to quash the jury on the basis of the alleged systematic exclusion of black persons was properly denied. The evidence here has failed to establish that the jury roll produced a result·which was "spectacularly not a cross section of the community." Jackson v. Morrow, Fifth Cir., 404 F.2d 903. Moreover, there has been no evidence given that different standards of qualifications were applied by the jury commissioners to the black community or that the Dallas County Jury Commission was influenced by racial considerations in making its selection of prospective jurors. White et al. v. State, 48 Ala.App. 111, 262 So.2d 313; Bryant and Williams v. State, 49 Ala.App. 359, 272 So.2d 286, cert. den. 289 Ala. 740, 272 So.2d 297.

## II

The day of trial, October 4, 1971, appellant's counsel made a motion for a change of venue, the basis of which is as follows:

"THE COURT: Mr. Hall, you have a motion to make?

"MR. HALL: Yes, Your Honor; before we do anything or otherwise, the Defendant would like to move for a change of venue on the grounds of apparent and blatant hostility in this community towards this Defendant because of the crime he's alleged to have committed and because of the fact immediately after the commission of the crime, the local newspaper gave widespread publicity to the facts involved, printed his picture and made allegations calculated to convince the community of his guilt. The Defendant contends that it's impossible for him to have a fair trial and a fair hearing in this community and it's impossible to pick a Jury without a preconceived notion of guilt."

The trial court denied this motion with the following ruling:

"THE COURT: Yes, sir; I'm going to deny the motion. I think whether or not such a situation does in fact exist would be revealed by the qualifications of the Jury for the trial of this particular case both by the Court on voir dire examination, which will, of course, be allowed and with the facts revealed that at that time that there was such preconceived notions, then, of course, you could renew the motion at that time."

In Mathis v. State, 280 Ala. 16, 189 So.2d 564, we find the following:

"Publicity by the press, radio and television does not necessarily constitute ground for a change of venue. See: Denton v. State, 263 Ala. 311, 314–315, 82 So.2d 406; Campbell v. State, 257 Ala. 322, 324–325, 58 So.2d 623; Littlefield v. State, 36 Ala.App. 507, 63 So.2d 565, cert. den. 258 Ala. 532, 63 So.2d 573. Whether a motion for a change of venue should be granted is a matter addressed to the sound discretion of the trial court. See: Cobern v. State, 273 Ala. 547, 551, 142 So.2d 869; Collins v. State, 234 Ala. 197, 199, 174 So. 296; Littlefield v. State, supra. From a consideration of the evidence taken on the hearing of the

motion, we cannot say that the trial court abused its discretion in denying the motion."

■ Additionally, the movant has the burden to reasonably satisfy the trial court that an impartial jury cannot be had in the circuit court to which the indictment is returnable. Tiner v. State, 271 Ala. 254, 122 So.2d 738; Dannelly v. State, 47 Ala.App. 363, 254 So.2d 434, cert. den. 287 Ala. 729, 254 So.2d 443.

We call attention to the fact that the incident occurred during the early morning on January 10, 1971, and that trial did not commence until almost nine months later, October 4, 1971.

We are of the opinion that the record here fully sustains the trial court's ruling. As observed by this Court through our distinguished Presiding Judge, then, Cates, J., in Dannelly v. State, supra, "The passage of time cannot be ignored as a factor in bringing objectivity to the trial."

■ Moreover, the trial court here allowed an extensive voir dire examination of all members of the jury venire. The trial judge in his discretion required that they be examined in panels of twelve, and we find that this was correctly within the discretion of the trial judge. McPhearson v. State, 271 Ala. 533, 125 So.2d 709; Seals v. State, 282 Ala. 586, 213 So.2d 645, and cases cited therein.

■ We are, therefore, of the opinion that the appellant's motions were properly overruled. Kelly v. State, 160 Ala. 48, 49 So. 535, and cases cited herein.

■ During a voir dire examination of the venire, one member thereof announced that he was the first cousin of the Assistant District Attorney. The trial court correctly determined that this relationship did not constitute grounds for challenge for cause within the meaning of Title 30, Section 55, Code of Alabama 1940. Frost v. State, 225 Ala. 232, 142 So. 427; Hayes v. State, 33 Ala.App. 364, 33 So.2d 744;

Wiggins v. State, 43 Ala.App. 382, 191 So. 2d 30.

### III

■ Appellant's counsel objected to the testimony of James L. Small, an Assistant State Toxicologist, concerning certain ballistic tests conducted with rounds taken from the .32 caliber pistol found at the appellant's apartment. Mr. Small testified that he had spent more than six years testing different weapons by test firing them and by comparing the results with bullets which had been retrieved for use as evidence. He further stated that such training had been under the supervision of State Toxicologist Dr. C. J. Rehling. Over objection, Mr. Small was allowed to testify as follows:

"A I found each of the evidence bullets, four in number, were fired from that weapon in addition the spent cartridge delivered to me as evidence, the spent cartridge was found to have a firing pin impression identical and it was fired in that weapon also."

We are of the opinion that the trial court properly allowed this testimony in evidence. Douglas v. State, 42 Ala.App. 314, 163 So.2d 477, cert. den. 276 Ala. 703, 163 So.2d 496.

### IV

■ Appellant's counsel further challenged the admission of the items seized from his apartment on the basis that the affidavits given Judge Childers were insufficient to support a finding of probable cause for issuance of the search warrant.

As stated in Clenney v. State, 281 Ala. 9, 198 So.2d 293:

"Another statement of the rule seems to be that the magistrate need not require that the informant or his affidavit be produced, and need not require that affiant have personal knowledge about the place to be searched, 'so long as there

was a substantial basis for crediting the hearsay.' Jones v. United States, supra, 362 U.S. [257] at page 272, 80 S.Ct. [725] at page 736 [4 L.Ed.2d 697]."

It should be here noted that we are not dealing with an affidavit from an unidentified informant, but rather with the affidavit of one of the victims of the alleged offense. A careful study of the affidavits, hereinabove set forth, clearly show that the appellant was the party who attacked, raped, robbed, and shot Mrs. Howard, and her affidavit described in detail the items taken by the appellant from her. The affidavit of the Executive Assistant Director of the Selma Housing Authority states specifically the address and location of appellant's apartment residence. These two affidavits are incorporated by reference thereto in Sheriff Wilson Baker's affidavit, all of which were given to Judge Childers. We hold such to be legally sufficient. Clenney v. State, supra, and cases cited therein.

### V

Finally, appellant's counsel cites us to Furman v. Georgia, and companion cases, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346.

The question presented in this case is identical to that presented in Hubbard v. State of Alabama, 290 Ala. 118, 274 So.2d 298.

 On authority of Hubbard v. State of Alabama, supra, the sentence of death imposed on the defendant, Franklin Delano Acoff, is vacated and set aside. In lieu and instead thereof, the sentence is corrected to provide that the said Franklin Delano Acoff be imprisoned in the State Penitentiary for the term of his natural life. The clerk of this court shall furnish a certified copy of this order to the clerk of the Circuit Court of Dallas County, and the clerk of that court shall issue a commitment in this case based upon this sentence of life imprisonment and shall for-

ward the commitment to the Board of Corrections.

The record here is in Six Volumes, containing 1,077 pages. We have carefully examined the record, as is our duty pursuant to Title 15, Section 389, Code of Alabama 1940, and find same to be free from error.

It follows that except as to the death sentence, the judgment of the Circuit Court is affirmed. With regard to the death sentence, the judgment of the Circuit Court is modified and the sentence is reduced to life imprisonment, and as modified, the judgment is affirmed.

Modified and affirmed.

All the Judges concur.