314 So.2d 79

**Osker YOEMANS**

v.

**STATE.**

**4 Div. 280.**

Court of Criminal Appeals of Alabama.

May 27, 1975.

Richard H. Ramsey, III, Dothan, for appellant.

William J. Baxley, Atty. Gen., for the State.

BOOKOUT, Judge.

Second degree murder; sentence: seventy-five years.

The appellant, Osker Yoemans, came to the home of his father and step-mother, Lee and Addie Yoemans, around 1:30 A.M. on July 24, 1973. He beat on the door and demanded entrance. His purported common-law wife Faye had left him on July 18, 1973, and had moved in with his brother, James Yoemans, and they were staying at the home of the father and the step-mother. There was bad blood between Osker and James. Osker had been having sexual relations with James' wife Jo Ann for about four years. James' wife had told him this when he told her he was leaving her to live with Faye, who had been living with Osker for four years. Faye later married James without getting a divorce from Osker because she said Osker had never gotten a divorce from his first wife and, therefore, she was not his common-law wife.

Thus, although Osker Yoemans had been having sexual relations with his brother James' wife for four years, he became enraged when Faye left him to live with James. This bizarre family relationship brought about the confrontation at the father's home which ended with the father dead and the step-mother and James wounded.

I

The appellant contends the State failed to present a prima facie case and thus his motion to exclude the State's evidence and his motion for a new trial should have been granted. In our opinion, the State clearly proved a prima facie case sufficient to go to the jury.

The evidence establishes that Osker Yoemans: (1) came to his father's home, (2) fought with him trying to get at his brother James in a back bedroom, (3) pulled a pistol from behind him and shot James once, (4) further wrestled with his father when another shot was heard by three witnesses and his father fell dying on the living room floor, (5) dragged Faye through the living room, then seeing James attempting to get a pistol and thereupon shot James a second time, and (6) in leaving with Faye, shot his step-mother.

While no one saw the gun discharge in appellant's hand and the bullet strike his father, the evidence presented is more than circumstantial. The step-mother testified in pertinent part as follows:

"Q. And you say that James said something?

"A. Yes. Yes, sir, to my knowledge, he said, 'Daddy, if he wants to shoot me, let him shoot me.'

"Q. Do you recall what, if anything, this defendant said at that time?

"A. No, sir, I don't. And at that time, he pushed his daddy aside and shot James, or I heard a shot, and I assume that it hit him, because I saw blood on his shirt.

"Q. All right. Go ahead? What happened next?

"A. And by that time, his daddy was back up between them. And he was still talking to them. You know, telling him that he didn't want no trouble, to get out. And at that time, I heard another shot, and then Lee fell on the floor. But before that, he told me, called out, he says, 'Sweetheart, go out to Mrs. Calhoun's and call the police.' And Osker told me if I started out that door, he would kill me.

"Q. That was before he shot Lee?

"A. Yes, sir.

"Q. All right. What, if anything, happened then?

"A. Well, at that time, when I heard a shot, and I seen his daddy fall on the floor.

"Q. Where was James?

"A. I don't know, sir. I couldn't see him at that time.

"Q. Was he in the living room?

"A. No, sir.

"Q. Was he in any area of the house that you could see from where you were standing?

"A. No, sir, not at that time, I couldn't see him."

Other testimony established that James never got his pistol out until after the appellant had shot him twice. Police found James' .22 caliber pistol on the bed when they arrived and none of the bullets had been fired. When Osker was arrested later, he pulled a .22 caliber pistol out from behind him and gave it to the officers. A ballistics expert compared the death bullet with test bullets fired from Osker's gun:

"The bullet removed from the body of the deceased has the same general class characteristics—and by that, I mean it has the six lands and grooves, with a right-hand twist; and the width of the lands and grooves are the same on the test bullet as are those on the evidence bullet. Due to the mutilated condition of the evidence bullet, no further comparison was made."

A pathologist testified that the cause of death was a gunshot wound of the left chest. There was no wound of any description on the back of the deceased. Other testimony had established that the deceased was between Osker and James when he was shot and that he was facing Osker, who had just shot James the first time.

■ A motion for a new trial is addressed to the sound discretion of the trial judge, and his ruling will not be disturbed unless it is occasioned by gross abuse of his discretion. In the instant case, the evidence was abundantly sufficient to present a question for the jury and sufficient to sustain a verdict. The trial court, therefore, did not err in denying the appellant's motion to exclude the State's evidence, nor his motion for a new trial on the ground of insufficiency of the evidence. Nichols v. State, 267 Ala. 217, 100 So.2d 750 (1958); Young v. State, 283 Ala. 676, 220 So.2d 843 (1969); Drummond v. State, 37 Ala.App. 308, 67 So.2d 280 (1953).

II

Counsel for appellant seeks reversal on the additional ground that the trial court erroneously denied his motion for change of venue.

Such motion was filed October 26, 1973, heard and denied November 6, 1973, and trial commenced November 29, 1973. On argument of the motion, the appellant introduced as exhibits, articles from the local Dothan newspaper. Exhibit No. 1 was from the front page and second page of

the newspaper dated July 24, 1973, describing the shooting and showing a photograph of Faye Yoemans and a photograph of an officer taking handcuffs off the appellant at the police station. Other photographs appeared on the second page continuation of the story. Exhibit No. 2 was from page two of the newspaper dated July 25, 1973, dealing with the charge placed against the appellant. Exhibit No. 3 was from page twelve of the newspaper dated October 28, 1973, reporting that a motion for a change of venue had been filed and set for hearing. Exhibit No. 4 was from page twenty-one and dated November 4, 1973, reporting that a hearing would be held the following Tuesday on the motion and that trial had been tentatively set for November 29, 1973.

Here, as on motion for a new trial, as a general proposition of law, a motion for change of venue is addressed to the sound discretion of the trial court, and its ruling will not be disturbed absent a showing of abuse of that discretion. Cobern v. State, 273 Ala. 547, 142 So.2d 869 (1962). The introduction of newspaper articles in testimony concerning their contents is alone insufficient to support a motion for a change of venue without a showing of the effect such articles would have on the venire. Beddow v. State, 39 Ala.App. 29, 96 So.2d 175 (1956); Aycock v. State, 50 Ala.App. 130, 277 So.2d 404 (1973).

In filing a motion for change of venue pursuant to Title 15, § 274, Code of Alabama 1940, the burden was upon the appellant to show the trial court that he could not receive a fair and impartial trial in Houston County due to prejudicial news coverage. Testimony by a newspaper reporter and a television reporter concerning the news coverage and the geographical area of coverage did not sufficiently show what effect such news coverage would have on the venire and in our opinion is insufficient to disturb the ruling of the trial court.

The front page newspaper story and television news coverage, both on July 24, 1973, were not of such inflammatory nature in our opinion to prejudice a jury on November 29–30, some four months later. Mathis v. State, 52 Ala.App. 668, 296 So.2d 755, cert. quashed 292 Ala. 732, 296 So.2d 764 (See concurring opinion by Justice Bloodworth). Subsequent articles submitted were less prominent and in and of themselves would not support the appellant's motion without a showing that they would have an adverse effect on the appellant's right to a fair and impartial trial. See Acoff v. State, 50 Ala.App. 206, 278 So.2d 210 (1973) and cases cited therein. We, therefore, find no error on the part of the trial court in denying the motion for change of venue.

We have made a careful review of the record as required by law and find no error prejudicial to the appellant.

Affirmed.

All the Judges concur.