The appellant was indicted for the first degree murder of Otis Lee Robinson, "by shooting him with a pistol." Following a jury trial the appellant was found guilty of murder in the first degree, and his punishment *Page 184 
fixed at life imprisonment. The trial court then entered a judgment in accordance with this verdict.
The appellant's motion for new trial was overruled following a hearing thereon.
Neil Ferguson, a radio operator for the Talladega County Sheriffs Department, testified that he received two transmissions from Officer James Hines of the Lincoln Police Department during the early morning hours of November 16, 1974. The first came at 1:25 a.m. and was a request for a photo-electric intoximeter operator to determine a subject's blood-alcohol content. Ferguson testified that the second call followed a short time later at 1:40 a.m. In this second transmission Ferguson heard Hines say either, "I'm hit" or "We're hit" and "I need help."
James Hines testified that in November of 1974 he worked as a police officer for the Town of Lincoln, Alabama. He stated that he reported for duty around midnight on Friday night, November 15, 1974. Hines said that he left the police station around 12:15 a.m., driving one of Lincoln's two patrol cars, that Officers Otis Robinson and Allen Harmon rode with him. Hines described the patrol car as a four-door Ford Galaxie with a cage separating the front and back seats. He added that there were no door or window handles in the back, that the rear doors had to be opened from the outside.
Hines testified that near the intersection of Highways 77 and 78, he and the other two officers spotted a Dodge Challenger weaving from one side of the road to the other, heading north towards Gadsden on Highway 77. He said that they followed the Challenger a little over a mile before turning on their blue light and pulling it over to the side of the road at a point approximately 50 to 100 yards short of the first road leading into the correct subdivision. Hines explained that he pulled in behind the Challenger so that the patrol car's left headlight shone on the door on the driver's side of the Challenger, the patrol car's headlights were on bright. All three officers exited the patrol car and Hines, flashlight in hand, walked up to the parked Challenger and asked the driver, the only person in the car, for his driver's license. The driver, whom Hines positively identified in court as the appellant, handed him a driver's license which read Hugh Worthington. Hines continued his testimony by saying that he asked the appellant, who had the odor of alcohol on his breath, to step around to the back of the car, that he failed a balance test and was arrested on a charge of DWI. Hines said that the appellant was asked to make sure his car was locked, and was then placed in the back seat of the patrol car with Harmon, that he drove and Robinson rode in the front seat on the passenger's side. Hines turned the patrol car around, radioed Talladega to have a PEI Operator standing by and headed back south on Highway 77, past I-20 and McCoy's Motel.
Hines testified that as they neared Speedway Boulevard, he heard a "clicking sound" followed almost simultaneously by two shots in the back seat after which he heard Harmon say, "Oh, Lord." Another shot was fired and Officer Robinson groaned and slumped forward. Hines explained that at this point he speeded up and attempted to "flip" the patrol car and that the appellant said "Okay, you black mother fucker, stop this car," that he then slammed on the brakes, threw the car into reverse, floored the accelerator, picked up speed, cut the wheels sharply to the right and jumped from the still moving car, striking his head on the door, as he heard another shot fired behind him. Hines explained that neither he nor Harmon "patted down" the appellant before placing him in the patrol car and that the first time he saw the appellant with a pistol was when he had it "up to the cage." Clear of the car, Hines unsuccessfully attempted to flag down a truck. By this time the appellant had kicked out most of the left rear window and fired a shot in Hines' direction. *Page 185 
Hines stated that he sought cover across the median on the other side of the highway where he exchanged a few shots with the appellant, however the appellant ran and disappeared down a dirt road and Hines rushed back to the car, radioed in, and sped to Citizens Hospital in Talladega. Hines testified that on November 17 at the Lincoln Police Department he identified the appellant from a number of photographs as being the man that shot Officers Robinson and Harmon. He also stated that he subsequently picked appellant out of a lineup that was held at the Anniston Police Station on November 29, 1974.
Hugh Worthington testified that he was a Birmingham optician and that two or three weeks prior to November 16, 1974, he was "held up" by four or five masked men who took his wallet which contained his driver's license.
Dr. Mario Papagini testified he arrived in the emergency room at Citizens Hospital in Talladega at approximately 1:30-2:00 a.m., November 16, 1974, after receiving a phone call at home. He stated that he examined the two that had been shot, that Harmon was dead and Robinson was in critical condition, registering little or no vital life signs. Dr. Papagini further testified that everything humanly possible was done in an attempt to save Robinson but that he had a severe head wound with brain tissue oozing forth from the entrance point, and that he died within five to eight minutes of his, Dr. Papagini's, arrival at the hospital.
State Toxicologist Carlos Rabren testified that he examined the body of Otis Robinson on November 16, 1974, that he detected two bullet wounds, one on the left side of the head in the temple area, the other in the left upper back region. Rabren stated that the head wound was surrounded by gunpowder burns indicating that the muzzle of the gun was close to Robinson's head at the time the shot was fired. Rabren concluded by saying that in his opinion death resulted from innercranial hemorrhage and shock associated with a gunshot wound to the head.
Eddie Wilder of the Talladega City Police Department testified that he was present at Citizens Hospital in Talladega during the early morning hours of November 16, 1974 at which time he took possession of Robinson's and Harmon's pistols. Wilder said that each pistol was still in its holster and contained six unfired rounds, that neither of the guns appeared to have been recently fired.
Both C.L. Martin, a recorder with the City of Lincoln, and acting Chief of Police John Elston were shown a patrol car screen with a hold and several indentations in it. Each identified it as the screen that had been removed from the car Hines had driven on the night of the shooting and testified that prior to the night in question the screen had no holes or indentations in it.
Talladega County Deputy Sheriff Paul Locke testified that he participated in a search just north of Choccolocco Creek on Highway 77 at a point where the patrol car had allegedly come to rest. He stated that he observed some shattered glass, and also that he found a set of keys off to the side of the highway on the edge of a dirt side road. Locke testified that these keys were later tested and fit the Dodge Challenger.
Captain James A. Davis of the Alabama Department of Public Safety testified that he was present at the Lincoln Police Station on the afternoon and evening of Sunday, November 17, 1974 at which time Officer Hines picked the appellant's picture out of over 400 others and identified him as the man that had shot Officers Robinson and Harmon. Davis also testified that the Dodge Challenger involved in the case had been stolen from Phoenix City, Alabama, on June 30, 1974.
Wayne Maness of the Federal Bureau of Investigation testified that he participated in the investigation into the shooting *Page 186 
deaths of Officers Robinson and Harmon, and that he was present with several other officers at the Siesta Motel on Highway 78 in Irondale near Birmingham at 6:00 a.m., on November 26, 1974, when the appellant was arrested. Maness stated that the officers found the appellant alone, lying on the lone bed in room 144 with a cocked pistol by his side. Maness added that the room had been paid for a week in advance and was registered in the name of "William Stevens." Maness said that the appellant was arraigned in Talladega and then driven to Anniston for a lineup, that a black man named James Hines came in and identified the appellant as the man who shot and killed two Lincoln police officers.
State Toxicologist John Case testified that on November 16, 1974, he inspected two automobiles, a white Dodge Challenger and a Lincoln patrol car, and removed latent fingerprints from each which he was able to match with known prints of the appellant Russell Hobson Hurley, Jr. Case said that his inspection of the Challenger also produced a pair of gloves and a ski mask. As for the patrol car, Case testified that he observed what appeared to be blood at various points on both the exterior and interior of the car, and that on the rear floorboard he found a cap, broken glass and lead fragments. Case testified that he tested the pistol of each of the three officers as well as the one confiscated from appellant at the time of his arrest and that none of them could have fired the bullets removed from the head and back of Officer Robinson.
Ronald G. Whitmus, Chief of the Fingerprint Bureau of the State of Alabama, took the stand and corroborated Case's conclusions with respect to his fingerprint comparisons. At this point the State rested its case.
The defense called Mrs. H.B. Phillips to the stand. She testified that she lived approximately three miles south of Lincoln and approximately one-quarter mile from where the two police officers were allegedly shot and killed. She stated that she was a light sleeper and that on the night in question she neither heard any gunshots nor heard anyone squeal.
Mrs. Phillips' daughter-in-law, Rosemary Phillips, took the stand and testified that she too lived near the scene of the alleged shooting but heard nothing on the night in question.
Alvin C. Gibbs, Commissioner of Licenses for Calhoun County, identified defendant's Exhibit Number 5 as a tax receipt for an automobile license tag that was sold by his office on November 15, 1974, to a man that identified himself as "N.L. Worthington," for a white Dodge Challenger. Gibbs stated that the man who bought the tag, whom he described as six feet, 180 pounds, with clean cut brown hair, was not the appellant.
Mike Odell testified that at 2:00 a.m., November 16, 1974 he left Quality Overhaul next to the Speedway and headed for home in Lincoln. As he turned right off of Speedway Boulevard onto Highway 77 at approximately 2:05 a.m., he saw a Lincoln patrol car heading south in his direction on Highway 77 turn around in the middle of the road and head back towards Lincoln. A few minutes later as Odell was proceeding north towards Lincoln, the Lincoln patrol car passed him heading south toward Talladega.
Barbara J. Cate, Director of Medical Records at Citizens Hospital in Talladega, testified in rebuttal for the State. She testified that Officers Robinson and Harmon were brought to the hospital in the same car on November 16, 1974, and that Harmon was officially admitted at 1:40 and Robinson at 2:00 a.m.
 I
Appellant first alleges that persons 21 years of age and under were systematically excluded from the venire which comprised both the grand and petit jury, and that his *Page 187 
motion to quash the indictment should therefore have been granted. The appellant however filed no affidavits in support of this motion, nor did he offer any other evidence in support of this motion.
The Constitution does not forbid the states from subscribing relevant qualifications for prospective jurors including a specified minimum age. Carter v. Jury Commission of GreeneCounty, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549. Moreover, at the time of the trial of this cause the provisions of Title 30, Section 21, Code of Alabama 1940, were applicable which specifically sets this age at 21 years.[1]
The burden is upon the defendant in a criminal trial when a motion to quash an indictment or petit jury challenge is made to go forward with the burden of proof in support thereof.Junior v. State, 47 Ala. App. 518, 257 So.2d 844. Cert. denied,288 Ala. 744, 257 So.2d 852. Thigpen v. State, 49 Ala. App. 233,270 So.2d 666. Lipscromb v. State, 53 Ala. App. 647,303 So.2d 148, and authorities therein cited.
Further, the alleged exclusion of "young persons" or persons between the ages of 21 and 29 years has been held not to constitute a cognizable class. United States v. Gooding, 5 Cir., 473 F.2d 425. Williamson v. State, 52 Ala. App. 617,296 So.2d 241. We therefore hold that the denial of appellant's motion, which was unaccompanied by affidavits or other proof, was entirely proper. Cases herein cited.
 II
Appellant next asserts that he was not afforded a preliminary hearing in this cause and thus his Constitutional rights were denied. We find attached to appellant's motion requesting a preliminary hearing a letter marked State's Exhibit 1 (R.P.24) which showed that defense counsel had written the District Attorney advising him of his request for a preliminary hearing, but it contains the language, "as soon as the toxicologist's report is received."
The record further reflects that the autopsy report from the toxicologist's office in Jacksonville, Alabama, is dated January 9, 1975, and the grand jury indictment was filed in open court on January 10, 1975. In short, while it appears that defense counsel and the District Attorney may have discussed a preliminary hearing, it does not appear from the record that this was called to the attention of the trial court before the indictment was returned by the grand jury of Talladega County in this cause. It is not clear when the defendant's own personal letter requesting a preliminary hearing was received by the trial judge.
Nevertheless, the record does reflect that such was called to the trial court's attention for the first time after indictment. We therefore hold that the failure to hold a preliminary hearing in this cause was not a denial of the appellant's rights such as to constitute a denial of due process of law. Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999,26 L.Ed.2d 387. Queor v. State, 278 Ala. 10, 174 So.2d 687.Core v. State, 50 Ala. App. 533, 280 So.2d 794. Cert. denied,291 Ala. 776, 280 So.2d 797.
 III
Appellant calls attention to his motion for a change of venue filed prior to trial to which he attached several newspaper articles which appeared in several newspapers circulated in Talladega County, Alabama. In addition, he attached a single magazine article. The State, to counter this, offered the affidavits of 29 persons, all of whom were citizens of Talladega County, to the effect that in their opinion the appellant could receive a fair and impartial trial in this county. Mere publicity by press, radio and television does not per *Page 188 
se constitute grounds for a change of venue. Mathis v. State,280 Ala. 16, 189 So.2d 564.
The burden is on the defendant seeking a change of venue to show to the reasonable satisfaction of the Court that he cannot receive a fair and impartial trial. Such motion is addressed to the sound discretion of the trial court and will not be disturbed on appeal in the absence of gross abuse. Moore v.State, 52 Ala. App. 179, 290 So.2d 246. Hurst v. State,54 Ala. App. 254, 307 So.2d 62. Cert. denied, 293 Ala. 548,307 So.2d 73.
Here the appellant offered no testimony but simply offered the several news stories in support of the motion in question. The trial in this cause was several months after the publication of the newspaper stories in question. We are therefore of the opinion that such was not of such an inflammatory nature as to prejudice a jury at this point in time. Mathis v. State, 52 Ala. App. 668, 296 So.2d 755. Cert. quashed, 292 Ala. 732, 296 So.2d 764, and authorities therein cited.
Some of these articles were not of a sufficiently prominent nature as would support a motion such as was here presented.Yoemans v. State, 55 Ala. App. 160, 314 So.2d 79.
We are of the opinion that the trial court properly overruled appellant's motion in this cause. Acoff v. State, 50 Ala. App. 206, 278 So.2d 210, and authorities hereinabove cited.
 IV
Finally, appellant asserts that the District Attorney in closing argument made prejudicial and sinister remarks and therefore this cause should be reversed.
We have carefully reviewed the transcript and find that nowhere therein was there any objection to any such alleged prejudicial argument; hence, there is nothing presented this Court for review. Gilliland v. State, 291 Ala. 89,277 So.2d 901, and McClendon v. State, 54 Ala. App. 327, 307 So.2d 723.
We have carefully examined this record as required by law and find no error therein. The judgment of the trial court is therefore due to be and the same is hereby
AFFIRMED.
CATES, P.J., and HARRIS, DeCARLO, BOOKOUT, JJ., concur.
[1] Act No. 77, Acts of Alabama, 1975 Regular Session, is not retrospective.