Curtis Robinson was indicted for and convicted of "assault with intent to murder." The trial court sentenced the appellant to five years' imprisonment but, in light of the jury's recommendation, and the appellant's good reputation in the community, suspended this sentence and placed the appellant on two years' probation. This period has now expired.
On May 26, 1979, the Southern Christian Leadership Conference (SCLC) conducted an anniversary march in Decatur, Alabama, protesting the arrest and conviction of Tommy Lee Hines on rape charges.[1] This march was blocked by a number of the members of the Invisible Knights of the Ku Klux Klan (Klan). In the presence of twenty or more armed policemen, a confrontation erupted between the SCLC marchers and the Klan. During that confrontation, the appellant, Curtis Robinson, drew his pistol and fired a shot which severely injured David Kelsoe, a member of the Klan.
The appellant admitted that he shot and injured Kelsoe. However, he contended that he did so in self-defense. He stated that he was not a part of the SCLC march initially, but rather, followed the marchers in his automobile with his family after he discovered the purpose of the march. He did not expect a confrontation with the Klan. *Page 885 
Appellant's evidence revealed that after the Klan had blocked the SCLC march, it's members armed with "clubs", only, broke through the police lines separating the two groups and attacked SCLC marchers. At the height of the ensuing confrontation, members of the Klan attacked appellant's car. A front tire was "shot out", and a headlight was broken. At this point, the appellant grabbed his pistol and exited his car. The appellant contended that he shot Kelsoe only after Kelsoe raised his "club" in a threatening manner and approached him. A police officer, who witnessed the incident, testified that he would have done the same thing had he been in the appellant's shoes.
The State's evidence, in addition to proving that the appellant shot and injured Kelsoe, tended to dispute the appellant's self-defense assertion. Another police officer testified that he saw the appellant, whom he knew and recognized, several blocks from and before the confrontation with the Klan, and that the appellant held his pistol up and stated that he was "going to get him a couple of them dudes." (R. 1132). Kelsoe testified that he did not attack the appellant with a raised club. (R. 1280, 1305).
Based on the evidence presented, the jury found the appellant "guilty as charged" but recommended "a sentence of probation." The appellant does not challenge the sufficiency of the evidence on this appeal.
 I
Appellant's primary contention on appeal is that the trial court erred in not granting his several motions for a change of venue. He argues that he could not have had, and did not receive, a fair and impartial trial in Morgan County, Alabama, because of the "racial turmoil" in the Decatur, Alabama, area and because of the widespread publicity of this "racial turmoil," generally, and the publicity given this specific shooting incident in which he was involved. He maintains that the turmoil and consequent publicity, which began after the arrest of Tommy Lee Hines on May 26, 1978, existed at the time of the instant shooting incident and persisted up to and during his trial. It is this persistant racial unrest and consequent publicity that appellant insists created an atmosphere of inherent prejudice against him which, in effect, made it impossible for him to receive a fair trial in Morgan County.
 A
In the trial court below, the appellant generated an abundance of material which was placed in evidence in support of his motion for a change of venue. In fact, most of the 16 volume, 3116 page transcript contains information pertaining to his change of venue motions and over 650 pages of the record contain transcriptions of testimony given and arguments made during the hearing on the venue issue, alone.
The trial judge heard all the evidence and the arguments with reference this change of venue motion, and determined that the climate was not one of inherent prejudice against this appellant and that a fair and impartial trial could be provided in Morgan County.[2] This determination of whether or not to grant a change of venue is a matter generally left to the sound discretion of the trial court. Mathis v. State, 52 Ala. App. 668, 296 So.2d 755 (1973), cert. denied, 292 Ala. 732,296 So.2d 764 (1974); Flurry v. State, 52 Ala. App. 64,289 So.2d 632 (1973), cert. denied, 292 Ala. 720, 289 So.2d 644 (1974);Acoff v. State, 50 Ala. App. 206, 278 So.2d 210 (1973); Turnerv. State, 410 So.2d 458 (Ala.Cr.App. 1981). This is generally the law because the trial court is in the best position to weigh the evidence and "evaluate the prejudicial atmosphere" surrounding the accused's case. Botsford v. State, 54 Ala. App. 482, 309 So.2d 835, cert. denied, 293 Ala. 745, 309 So.2d 844
(1975); Burnett v. State, 350 So.2d 718 (Ala.Cr.App. 1977). As was the case in Burnett, 350 So.2d at 722: *Page 886 
 "It is to be noted that the trial judge was presiding in his own circuit and was not a visiting judge. He, in a sense, was at home and no doubt was familiar with existing sentiment in the county and the extent of any hostile atmosphere toward defendant, to the end that it might preclude him from obtaining a fair trial and an unbiased verdict. [Citations omitted.] The trial judge was in a position to evaluate any existing sentiment adverse to defendant's right to a fair and unbiased jury panel to try his case."
In this particular case, the trial judge, the Honorable Richard L. Hundley, was well aware of the racial tension and possible prejudice in Morgan County, for he had previously granted a change of venue in the Tommy Lee Hines case because, unlike the instant case, there was some doubt that Hines could have received the fair and impartial trial which due process of law requires.
Consequently, we have reviewed the change of venue evidence in search of any clear or gross abuse of discretion on the part of the trial court and have found none. Botsford v. State, supra; McLaren v. State, 353 So.2d 24 (Ala.Cr.App.), cert. denied, 353 So.2d 35 (Ala. 1977). From our review, we have concluded that, although the appellant zealously and earnestly tried to establish, through witnesses, news media accounts, and arguments, that the "general citizenry" of Morgan County was prejudiced against the SCLC, black people in general, and, specifically, the appellant, himself, the evidence presented does not demonstrate any popular passion or prejudice against this appellant that might have prevented him from receiving "a fair and impartial trial." Mathis v. State, supra; Botsford v.State, supra; McCray v. State, 395 So.2d 1057 (Ala.Cr.App. 1980), cert. denied, 395 So.2d 1062 (Ala. 1981).
The evidence did establish that there had been a significant amount of racial tension in Morgan County surrounding the Tommy Lee Hines case. This tension existed before the May 26, 1979, march and shooting incident involving this appellant and arguably existed, to some extent, up to the day of his trial. However, the evidence also indicated that the so called "turmoil" was between two politically active and adverse groups, the SCLC and the Klan, both of which were infiltrated with persons who were not even residents of Morgan County. It would be an understatement to say that there was animosity between these adverse political groups. However, such animosity as the Klan might have for the SCLC or vice versa, cannot and should not, be attributed to the local citizens of Morgan County, Alabama. Granted, the citizens of Morgan County were somewhat concerned and disturbed that these political activists, who represented a very small minority of the population of Morgan County, drew so much news media attention, but any general animosity was for the potential violence that demonstrations by and confrontations between these two groups presented. The appellant failed to prove the existence of any hostility or animosity against him, personally.
The news media accounts of the shooting of David Kelsoe and the subsequent arrest of the appellant were factual and objective. Mathis v. State, supra; McLaren v. State, supra. There was no "media trial" of the appellant. The various news media did not insist upon appellant's arrest or conviction and did not appeal for mob action or attempt to excite passion or prejudice against him. Mathis v. State, supra; Botsford v.State, supra; McLaren v. State, supra.
Furthermore, "the passage of time cannot be ignored as a factor in bringing objectivity to the trial." Dannelly v.State, 47 Ala. App. 363, 254 So.2d 434, cert. denied, 287 Ala. 729, 254 So.2d 443 (1971); Acoff v. State, supra; Mathis v.State, supra. This is true even where, in contrast with the instant case, there was evidence of initial animosity toward the accused. See, Flurry v. State, supra; Burnett v. State, supra; Speigner v. State, 367 So.2d 590 (Ala.Cr.App. 1978), cert. denied, 367 So.2d 597 (Ala. 1979).
In the cases cited, the delays between the incident and its respective publicity and the *Page 887 
trials of the cases lasted approximately six to nine months. In the instant case, the shooting incident occurred on May 26, 1979, the change of venue hearing took place on January 14, 1980, and the trial began on September 29, 1980, over 16 months after the shooting incident in question.
Under these circumstances, the trial court did not abuse its discretion in denying, on February 25, 1980, appellant's motion for a change of venue in this cause. Before it made this final ruling the trial court examined 12 members of the jury pool in attendance at the Morgan County Courthouse on February 25. These jurors, who had been randomly selected by the bailiff, confirmed the fact that the details of the shooting incident were not common knowledge, that the general citizenry of Morgan County was not involved in the activities of either the SCLC or the Klan, and that there was no animosity or hostility, passion or prejudice, against the appellant either because of his race or because of his involvement in the May 26, 1979, march or shooting incident. Contrary to appellant's conclusions, these jury pool members were convinced that the appellant could and would receive a fair trial in Morgan County.
Some of appellant's witnesses at the change of venue hearing indicated, on cross-examination, that with the widespread publicity, the public sentiment might, in fact, be in appellant's favor. This speculation was perhaps verified when the jury recommended that appellant, a man they had found guilty of "assault with intent to murder" receive a sentence ofprobation, only.
 B
Appellant further contends that his motions to reopen or renew the change of venue issue after the trial court's ruling on February 25, 1980, should not have been denied without another hearing. We find no merit in this contention or in the arguments in support thereof. These additional matters were also within the sound discretion of the trial court and said discretion was not abused. (Cases cited above).
Appellant focuses on a public opinion survey and newspaper articles post-dating the February 25 ruling. The newspaper articles, which appeared in the local papers just prior to the trial merely publicized in a factual manner the upcoming trial. The public opinion survey was an update of a survey conducted in November, 1979, which the trial court, at the January, 1980, hearing, found inconclusive with reference the change of venue issue.
The appellant argues that one reason a change of venue should have been ordered is that the prospective jurors were intimidated by the Klan, which allegedly vowed to retaliate should the appellant not be convicted. However, except for appellant's arguments and speculations, there was no proof whatsoever of any Klan retaliatory threats with reference to the appellant's case, or of any prospective juror intimidation.
In holding that there was no error in denying appellant's change of venue motions, we hereby acknowledge and applaud the trial court's patience and diligence in handling this matter.
 II
The remaining issues raised by the appellant concern the voir dire of the jury panel. The appellant contends that based upon the pretrial publicity and answers during voir dire of the entire jury venire, his challenges for cause of prospective jurors Smith and Turney should have been granted, and he should have been permitted to conduct a separate, individual voir dire examination of each member of the jury venire, especially prospective jurors Smith and Turney.
 A
The trial court's denial of appellant's requests to individually question each prospective juror out of the presence of the other prospective jurors, particularly prospective jurors Smith and Turney, was not error. The matter of how the voir dire of the jury venire will be conducted is within the discretion of the trial court and there was no abuse in this instance. Gilliland v. *Page 888 State, 291 Ala. 89, 277 So.2d 901 (1973); Witherspoon v. State,356 So.2d 743 (Ala.Cr.App. 1978), and cases cited therein.
Although the trial court would not allow individual voir dire out of the presence of the rest of the venire, the trial court, itself, thoroughly questioned the venire with reference probable prejudice and bias,[3] and permitted additional questioning by the appellant of the entire venire and of the individual members thereof.
 B
During the voir dire of the venire, it was revealed that prospective juror Smith had dated a member of the Klan and that prospective juror Turney knew the victim, Klansman David Kelsoe. Upon further examination, Smith stated that she and the Klansman that she had dated never discussed the Klan or its philosophies and that she knew very little about either. Smith also indicated that she was not biased or prejudiced against the appellant.
Prospective juror Turney, likewise, indicated that he was not biased or prejudiced against the appellant. He merely stated that he knew David Kelsoe and had seen him in a Klan uniform.
The appellant challenged for cause these two prospective jurors alleging probable prejudice and the trial court denied same. This decision was within the sound discretion of the trial court. Motes v. State, 356 So.2d 712 (Ala.Cr.App.), cert. denied, 356 So.2d 720 (Ala. 1978); Glenn v. State,395 So.2d 102 (Ala.Cr.App. 1980), cert. denied, 395 So.2d 110 (Ala. 1981); Stewart v. State, 405 So.2d 402 (Ala.Cr.App. 1981), and cases cited therein; Potter v. State, 416 So.2d 773
(Ala.Cr.App. 1982). Contrary to appellant's assertions, it was not shown on voir dire that either prospective juror challenged here would have been biased or prejudiced against him. See,Baker v. State, 48 Ala. App. 535, 266 So.2d 340, cert. denied,289 Ala. 739, 266 So.2d 344 (1972); McCorvey v. State,339 So.2d 1053 (Ala.Cr.App.), cert. denied, 339 So.2d 1058 (Ala. 1976); Carlton v. State, 415 So.2d 1241 (Ala.Cr.App. 1982). We, therefore, find no error in the trial court's overruling of these challenges. The appellant concedes that he used two peremptory challenges in striking Smith and Turney. Therefore, neither of these challenged jurors served on the trial jury in this cause.
For the foregoing reasons, appellant's conviction and sentence are due to be and are hereby affirmed.
AFFIRMED.
All the Judges concur.
[1] See, Hines v. State, 384 So.2d 1171 (Ala.Cr.App.), cert. denied, 384 So.2d 1184 (Ala. 1980).
[2] Judge Hundley, the trial judge in the instant case, was also the trial judge in the Tommy Lee Hines case in which he did grant a change of venue.
[3] The voir dire covered approximately 160 pages in the record and was very sifting and thorough.