[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 124 
Glenn Holladay was indicted for the capital offense of "murder wherein two or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct," in violation of § 13A-5-40(a)(10), Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment" and recommended the death sentence by a vote of 12-0. The trial judge accepted the jury's recommendation and sentenced this appellant to death by electrocution.
Richard John Hearty testified he met the appellant in Nashville, Tennessee in August of 1986. The appellant identified himself as Bobby Hill and stated he was from Gadsden, Alabama. On August 23, 1986, the appellant visited Hearty at his residence. While there, the appellant told Hearty that his ex-wife's name was Becky and "she had a new boyfriend and that if she didn't stop seeing him, he [the appellant] was going to kill her." (R. 13241325).
In August of 1986, the appellant's former wife, Rebecca Ledbetter Holladay, was living in a mobile home in Gadsden, Alabama. On the night of August 24-25, 1986, Rebecca Holladay retired to her bedroom to go to sleep. Also present in the mobile home that night were Rebecca's boyfriend, David Robinson, her son, Shea Ledbetter, her sister, Katrina Ledbetter, and Larry Thomas, Jr., her son's friend who lived nearby. At some point, Larry Thomas, Jr., left the mobile home to return to his residence for the purpose of getting something to eat. As Thomas walked outside, the occupants of the trailer heard two gunshots outside. Thomas's body was later discovered outside the trailer. Immediately thereafter, the appellant forced his way inside his ex-wife's trailer. Upon entry, the appellant shoved Katrina Ledbetter as she was calling to her sister the fact that the appellant was inside the trailer. *Page 125 
As the appellant proceeded down the hallway, he stopped at Shea Ledbetter's bedroom and attempted to turn on the lights. After the appellant left Shea's bedroom, Shea managed to run out of the trailer. Shea and Katrina ran to Larry Thomas's parents' home.
The appellant continued down the hallway and entered the back bedroom where he found David Robinson and Rebecca Holladay. The appellant shot David Robinson in the chest and arm. He shot Rebecca Holladay in the back of the head. David Robinson, Larry Thomas, Jr., and Rebecca Ledbetter Holladay all died as a result of the gunshot wounds they received on the night in question.
On the afternoon of August 29, 1986, the appellant called Doris Ruth Nance, a neighbor of the appellant's father. He told Nance that he had "done a bad thing." (R. 1437). The appellant stated that he had not meant to kill Larry Thomas. He thought Thomas was his ex-wife's boyfriend.
The appellant was apprehended for this offense on October 9, 1986, after he was shot by a police officer in Gainesville, Florida.
The appellant testified in his own behalf. He denied being at Rebecca Holladay's trailer home on the night in question and stated he was in Nashville, Tennessee at the time. He denied killing any of the victims.
 I A
The appellant contends that his motion for change of venue should have been granted because of the pre-trial publicity which surrounded his case. He argued that this made it impossible for him to obtain a fair and impartial trial in Etowah County, Alabama.
 "A defendant is entitled to a change of venue if he can demonstrate to the trial court that he cannot receive a fair and impartial trial in the county where he is to be tried. Ala. Code, § 15-2-20
(1975); Nelson v. State, 440 So.2d 1130
(Ala.Crim.App.), cert. denied, 440 So.2d 1130 (Ala. 1983); Anderson v. State, 362 So.2d 1296 (Ala.Crim.App. 1978).
 " 'There are two situations in which a change of venue is mandated. The first is when the defendant can show that prejudicial pre-trial publicity "has so saturated the community as to have a probable impact on the prospective jurors" and thus renders the trial setting "inherently suspect." McWilliams v. United States, 394 F.2d 41 (U.S.C.A. 8th Cir. 1968); Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). In this situation, a "pattern of deep and bitter prejudice" must exist in the community. Irvin v. Dowd, [366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)] supra.
 " 'The second situation occurs when the defendant shows "a connection between the publicity generated by the news articles, radio and television broadcasts and the existence of actual jury prejudice." McWilliams v. United States, supra.'
"Nelson, 440 So.2d at 1131-32."
Thomas v. State, 539 So.2d 375 (Ala.Crim.App. 1988). See alsoRobinson v. State, 430 So.2d 883 (Ala.Crim.App. 1983).
There is no doubt that there was extensive publicity surrounding this case. At the time this appellant allegedly committed the capital offense at issue, he was an escapee from the Cherokee County, Alabama Jail. One of Rebecca Holladay's relatives was also murdered within several weeks of the murders in question in this case. The appellant was a prime suspect in that murder as well. The appellant was at large until he was shot and captured by a deputy with the Alachua County Sheriff's Department in Gainesville, Florida. These facts were extensively reported by the press.
Certainly there was widespread media coverage of the events surrounding this case. See Clerk's Record 134-744. However, in order to obtain a change of venue, it must be shown that the pre-trial publicity surrounding the case was inherently prejudicial. Anderson. *Page 126 
After our review of the defense's exhibits relating to this issue and the testimony adduced at the hearing on this question, we conclude that the publicity in this case was factual and objective. The bulk of the publicity surrounding this case dealt with the details of the appellant's offense and the developments in his case.
The appellant seems to contend that the pre-trial publicity made the community fearful of the appellant, and thus, prejudiced him within the community. While we admit the community was afraid of the appellant before his capture, we believe this was due more to the fact that "there was a killer on the loose" than to statements by the media concerning the appellant.
The great majority of the publicity in this case occurred between the time of the murders in August of 1986 and the appellant's capture in October of 1986. Thereafter, the publicity in this case greatly diminished. The appellant's trial took place in June of 1987, seven months after the bulk of the media coverage in this case. The passage of time cannot be ignored as a factor in bringing objectivity to a case in which there has been extensive pre-trial publicity.Robinson v. State, 430 So.2d 883 (Ala.Crim.App.), cert.denied, 430 So.2d 883 (Ala. 1983); Langham v. State,494 So.2d 910 (Ala.Crim.App.), cert. denied, 494 So.2d 910 (Ala. 1986).
Thus, we do not believe that the appellant has shown that the community was saturated with inherently prejudicial pretrial publicity to the extent he could not receive a fair and impartial trial in Etowah County, Alabama.
Furthermore, we do not believe that the appellant has shown actual jury prejudice as a result of the alleged pre-trial publicity.
The way to demonstrate actual jury prejudice is through an extensive and thorough voir dire examination.Anderson. There is no question that the voir dire examination in the case at bar was both thorough and extensive as to each prospective juror's knowledge of and feelings about this case. The fact that virtually every prospective juror had some knowledge of the appellant's case does not mean the appellant could not receive a fair and impartial trial. See Thomas.
Merely because these jurors were not totally ignorant of the facts and issues in this case, does not mean they were unable to render a fair and unbiased verdict. Anderson.
There were 101 prospective jurors in this case. One juror was excused. The trial judge granted 29 of the appellant's challenges for cause. Of these jurors, at least eight had a fixed opinion based on pre-trial publicity. Another five had fixed opinions as to the appellant's guilt based on other reasons (knew the victim or family). The other 16 prospective jurors expressed reservations as to whether they could be fair based on the pre-trial publicity or other reasons. Obviously, the trial judge granted the challenges for cause as to these 16 jurors out of an abundance of caution. All of the prospective jurors who either had a fixed opinion or expressed reservations about their impartiality were excused. Thus, the appellant has failed to demonstrate a connection between the pre-trial publicity in this case and the existence of actual jury prejudice.
Thus, the trial judge correctly denied the appellant's motion for a change of venue.
 B
The appellant further contends that the trial court erred by denying his motion for extraordinary expenses for a public opinion poll. We disagree.
" 'The proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination,' Anderson v. State, 362 So.2d 1296, 1299
(Ala.Crim.App. 1978), not through extensive and expensive surveys." Ex parte Grayson, 479 So.2d 76, 80 (Ala.), cert.denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985).
 II
The appellant contends that the trial court erred by admitting into evidence two oral statements made by him after he was *Page 127 
shot and arrested by the Alachua County Sheriff's Department, in Florida.
Officer Pete Brigette arrived at the scene where the appellant was apprehended shortly after he had been shot. The appellant had been shot in the abdomen and in the left arm and chest area. The paramedics transported the appellant to Alachua General Hospital. Brigette followed the ambulance and joined the appellant in the emergency room. While treatment was being administered to the appellant in the emergency room, the appellant began talking. Brigette asked the attending physician if he could read the appellant his Miranda rights. The physician gave his permission and Brigette read the appellant his Miranda rights. The appellant stated that he understood these rights and he wanted to talk. The appellant then stated, "My name is Glenn Holladay. I shot and killed four people in Alabama." (R. 1483). Some time later, after the appellant had been removed to the Surgical Intensive Care Unit, the appellant said in the presence of Brigette and another officer, "They say I killed five people over a woman. She was a lying woman. She won't be lying no more." (R. 1486). The appellant then laughed and winked at the officers.
The appellant asserts that the two above-quoted statements should not have been admitted into evidence "because of his lack of education, his illiteracy and his severe medical condition at the time [he made the statements], he could not knowingly and voluntarily waive his right against self-incrimination." (Appellant's brief, p. 38).
Before an inculpatory statement may be admitted into evidence, the trial judge must find that the statement was voluntarily made. Ex parte Singleton, 465 So.2d 443 (Ala. 1985).
 "The trial judge must examine all attendant circumstances in making the determination of voluntariness, allowing each case to stand or fall on its own individual merit. The ultimate inquiry, therefore, is whether the appellant's rational intellect and free will were overcome at the time he confessed, thus rendering the confession involuntary. Eakes, [387 So.2d 855 (Ala.Cr.App. 1978)] supra. The determination of the voluntariness of the confession is within the sound discretion of the trial court. Crawford v. State, Ala.Cr.App., 377 So.2d 145, Ala., 377 So.2d 159
(1979)."
Hardy v. State, 409 So.2d 996, 1000 (Ala.Crim.App. 1982).
The appellant asserts that his statements were involuntary based on the fact that he had been shot and was possibly on medication at the time he made the inculpatory statements. Officer Brigette stated that, although the appellant's wounds were possibly life-threatening, the appellant was conscious, alert, and responsive from the time Brigette first saw him at the scene of the shooting until he left the appellant in the hospital some seven hours later. Furthermore, it is doubtful that the attending physician would have given Brigette permission to give the appellant his rights if he thought the appellant might be incapable of understanding them based on his condition. In Thompson v. State, 462 So.2d 777 (Ala.Crim.App. 1984), this court held that the defendant's confession was not involuntarily made merely because he was in pain as a result of a gunshot wound at the time that he made his confession. We believe the same to be true in the instant case.
The appellant presented no evidence that he was on medication at the time his statement was made. Officer Brigette testified that he was with the appellant the entire time except for a brief period when the appellant was being transported to the hospital and when he was taken for x-rays. He testified that these would have been the only times the appellant could have received medication. However, even if the appellant had received medication for his injuries, "there is absolutely no evidence that the [appellant] was 'so far dethroned that he was unable to understand the effect of what he was saying.' "Byrd v. State, 421 So.2d 1344, 1348 (Ala.Crim.App.), cert.denied, 421 So.2d 1344 (Ala. 1982) (citing C. Gamble, McElroy'sAlabama Evidence § 200.14(2) (3rd ed. 1977)). In fact, Officer Brigette stated that the *Page 128 
appellant did not appear to be under the influence of drugs. Thus, the mere possibility that the appellant may have received medication does not automatically render his statements involuntary. See Byrd; Nelson v. State, 398 So.2d 421
(Ala.Crim.App. 1981).
We also do not believe the appellant's illiteracy and lack of education rendered his statements involuntary. While these factors should be considered when determining the voluntariness of a statement, "weak intellect or illiteracy alone will not render a confession inadmissible." Hobbs v. State,401 So.2d 276, 282 (Ala.Crim.App. 1981).
The appellant was 37 years old and had numerous previous convictions at the time of his statements. The "totality of the circumstances" indicates that the appellant would have and did understand his Miranda rights fully.
 III
The appellant contends the trial court erred by refusing to charge the jury on intentional murder as a lesser-included offense of the crime for which the appellant was indicted.
The appellant was indicted for the capital offense of "murder wherein two or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct." Ala. Code, § 13A-5-40(a)(10) (1975).
 "Regarding 'murder,' as that word is used in this State's capital statute, § 13A-5-40(b), Code of Alabama 1975, provides as follows:
 " '(b) Except as specifically provided to the contrary in the last part of subdivision (a)(13) of this section, the terms "murder" and "murder by the defendant" as used in this section to define capital offenses mean murder as defined in section 13A-6-2(a)(1), but not as defined in section 13A-6-2(a)(2) and (3). Subject to the provisions of section 13A-5-41, murder as defined in section 13A-6-2(a)(2) and (3), as well as murder as defined in section 13A-6-2(a)(1), may be a lesser included offense of the capital offenses defined in subsection (a) of this section.'
 "Finally, § 13A-5-41, Code of Alabama 1975, provides as follows:
 " 'Subject to the provisions of section 13A-1-9(b), the jury may find a defendant indicted for a crime defined in section 13A-5-40(a) not guilty of the capital offense but guilty of a lesser included offense. Lesser included offenses shall be defined as provided in section 13A-1-9(a), and when there is a rational basis for such a verdict, include but are not limited to, murder as defined in section 13A-6-2(a), and the accompanying other felony, if any, in the provision of section 13A-5-40(a) upon which the indictment is based.' "
Walker v. State, 523 So.2d 528, 537 (Ala.Crim.App.), cert.denied, 523 So.2d 528 (Ala. 1988).
The offense of intentional murder is defined in §13A-6-2(a)(1), Code of Alabama 1975. This statute reads as follows:
"A person commits the crime of murder if: with intent to cause the death of another person, he causes the death of that person or of another person." Ala. Code, § 13A-6-2(a)(1) (1975).
Section 13A-1-9(a), Code of Alabama, provides that an offense is included if:
 "(1) It is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged; or
 "(2) It consists of an attempt or solicitation to commit the offense charged or to commit a lesser included offense; or
 "(3) It is specifically designated by statute as a lesser degree of the offense charged; or
 "(4) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interests, or a lesser kind of culpability suffices to establish its commission."
"[A] lesser included offense is generally defined as an offense the elements of which must necessarily be proven in order to convict for the specific higher offense." *Page 129 Ex parte Washington, 448 So.2d 404 (Ala. 1984) (citation omitted).
Since intentional murder is an element of § 13A-5-40(a)(10) and this fact must be proven to support a conviction of this capital offense, intentional murder is by definition and statute a lesser-included offense of § 13A-5-40(a)(10). SeeWalker; Cox v. State, 489 So.2d 612 (Ala.Crim.App. 1985),cert. quashed, 489 So.2d 612 (Ala. 1986); Leverette v. State,462 So.2d 972 (Ala.Crim.App. 1984), cert. denied,462 So.2d 972 (Ala. 1985); Crosslin v. State, 446 So.2d 675
(Ala.Crim.App. 1983); Ex parte Kyzer, 399 So.2d 330 (Ala. 1981).
However, an accused is not always entitled to an instruction on a particular offense even though this offense is included in the offense for which he is charged:
 "A person accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position. Wiggins v. State, 491 So.2d 1046
(Ala.Cr.App. 1986); Chavers v. State, 361 So.2d 1106 (Ala. 1978); Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973). This rule applies regardless of whether the State or defendant offers the evidence. Pruitt v. State, 457 So.2d 456 (Ala. 1984). Even if the defendant denies the charge in toto, but the evidence presented by the State suggests a reasonable theory supporting a charge on a lesser offense, the trial court is obliged to give a charge on the lesser offense when requested. Pruitt v. State. A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense or (2) the requested charge would have a tendency to mislead or confuse the jury. Lami v. State, 43 Ala. App. 108, 180 So.2d 279, cert. denied, 278 Ala. 710, 180 So.2d 282 (1965). Every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility. Chavers v. State, supra; Burns v. State, 229 Ala. 68, 155 So. 561 (1934). Section 13A-1-9(b) provides, 'The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.'
 " 'The "safer" practice is to charge upon all degrees of homicide: "[I]t is much the safer rule to charge upon all the degrees of homicide included in the indictment, when a party is on trial for murder, unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree." Pierson v. State, 99 Ala. 148, 153, 13 So. 550 (1892), approved in Williams v. State, 251 Ala. 397, 399, 39 So.2d 37 (1948).'
 "Phelps v. State, 435 So.2d 158, 163 (Ala.Cr.App. 1983)."
Jones v. State, 514 So.2d 1060, 1063-64 (Ala.Crim.App.),cert. denied, 514 So.2d 1068 (Ala. 1987). See also Anderson v.State, 507 So.2d 580 (Ala.Crim.App. 1987); Connolly v. State,500 So.2d 57 (Ala.Crim.App. 1985), aff'd, 500 So.2d 68 (Ala. 1986).
A lesser-included offense instruction should only be refused in a death case when the evidence adduced at trial couldonly support a conviction on the crime charged in the indictment. Thus, the ultimate question before this court is whether there is a reasonable theory from the evidence in this case, which would support a charge on the lesser-included offense of intentional murder. We are of the opinion that there is not.
The evidence which makes this crime a capital offense (the murder of two or more persons) is undisputed. At least two of the victims were killed by the same gun. The appellant's defense was alibi. There was absolutely no evidence presented by the defense or the State that appellant killed only one of the victims but not the other two victims. There was absolutely no evidence presented that someone accompanied the appellant to the trailer on the night in question. *Page 130 
The crime of intentional murder is automatically elevated to capital murder when two or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct. Therefore, if the evidence in this case showed that the appellant killed two or more of the victims (which it does), then the jury had to convict the appellant of capital murder.
We conclude that there was no reasonable theory under the evidence presented at this trial which could have justified a conviction of this appellant for intentional murder. Thus, the trial judge properly refused the appellant's request for a charge on the lesser-included offense of intentional murder.
 IV
The appellant asserts the prosecutor made several improper remarks during closing arguments at the sentencing phase of the trial.
 "In reviewing allegedly improper prosecutorial argument, it first must be determined if the argument was, in fact, improper. If determined to be improper, the test for reviewing improper argument must be applied. This test is not whether the comments did influence the jury, but whether they might have influenced the jury in arriving at its verdict. Ex parte Ward, 497 So.2d 575, 575-76
(Ala. 1986); Ex parte Beecher, 294 Ala. 674, 320 So.2d 727 (1975). As our supreme court explained in Ex parte Beecher, 294 Ala. at 682, 320 So.2d at 734:
 'It has long been held regarding the introduction of illegal evidence, such as coerced confessions, that the test is not whether the illegal evidence did influence the jury, but whether it might have influenced it in arriving at the verdict. Hubbard v. State, 283 Ala. 183, 215 So.2d 261
(1968), vacated in part, 408 U.S. 934
[92 S.Ct. 2851, 33 L.Ed.2d 747] . . . (1972). See also Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and Fahy v. Connecticut, 375 U.S. 85 [84 S.Ct. 229, 11 L.Ed.2d 171] . . . (1963).' "
Rutledge v. State, 523 So.2d 1087, 1092 (Ala.Crim.App. 1987),reversed on other grounds, Ex parte Rutledge, 523 So.2d 1118
(Ala. 1988).
Each of the prosecutor's arguments to which the appellant objects will be set out separately.
A
 "ASSISTANT DISTRICT ATTORNEY FLOYD: But from the State's standpoint, the people of the state of Alabama, I want to say a few words about what we feel, and why we feel the way we do in that this defendant should be given the death penalty.
 "You know, as an observer in this community and in hoping people feel that I am one of the law abiding citizens of this county, I am really sick and tired of violent people running around our community. I am sick and tired of people that rape in our community, our wives, and our children. And I'm tired of people, I'm sick and tired of people that go out and violently kill other people in our community, and we have had some of that.
 "I'm sick and tired of people assaulting the good people in this county. I am sick and tired of the violent element in this community terrorizing our community. I am sick and tired of people being convicted of violent crimes, sent to the penitentiary, and then, come back to —
 "MR. WARREN: Your Honor, may we approach the bench? I hate to interrupt. (Whereupon, the following occurred outside the hearing of the jury:)
 "MR. WARREN: I'm going to object, now, to this argument as being improper. It's an argument about going to the penitentiary and —
 "ASSISTANT DISTRICT ATTORNEY FLOYD: I will withdraw it, Your Honor.
 "MR. WARREN: And we move for a mistrial. Ask you to instruct the jury to disregard that. This argument is not to inflame the jury, and not to make the kind of argument that Mr. Floyd is making at this point. *Page 131 
"THE COURT: The motion for a mistrial is denied.
 "I will ask counsel, of course, this is closing argument, and I will ask counsel to concern the argument primarily with mitigating and aggravating circumstances, recommended sentence.
 "MR. WARREN: Your Honor, would you — we would respectfully request you to instruct the jury to disregard the comments about the way the penal system is operated, and whether people get in or out of prison.
 "ASSISTANT DISTRICT ATTORNEY FLOYD: I'm not going to argue —
"MR. WARREN: You have already argued it.
 "THE COURT: Ladies and gentlemen, I do direct you not to be concerned, and disregard the last part of Mr. Floyd's argument. We are here primarily on the issue of recommended sentence based upon what you believe to be aggravating circumstances and what you believe to be mitigating circumstances.
"All right, go ahead, Mr. Floyd." (R. 1732-34).
"The general rule is that prejudicial statements, even though improper, are considered capable of being eradicated by the trial court in sustaining objections thereto or by appropriate instructions to the jury or both. Meredith v. State,370 So.2d 1075 (Ala.Crim.App.), cert. denied, 370 So.2d 1079 (Ala. 1979)." Bui v. State, 551 So.2d 1094 (Ala.Crim.App. 1988).
Thus, even if the prosecutor's argument, which is quoted above, was improper, any prejudice which may have resulted from this remark was eradicated by the trial court's instruction to the jury to disregard this argument. The motion for mistrial was correctly denied. See Shadle v. State, 280 Ala. 379,194 So.2d 538 (Ala. 1967).
B
 "DISTRICT ATTORNEY HEDGSPETH: Holidays are usually thought of, as far as national holidays are concerned, or something that maybe we all enjoy. Gives us a day off from work; 4th of July, Labor Day. But as far as them actually — other than being a national holiday, what really makes them special and important is the way that we utilize those holidays with our family. It's not the fact that everybody takes off Labor Day, it's not the fact that everybody shoots firecrackers on the 4th. It's the fact that we get a chance to get together with our families and cook out, watch our kids shoot firecrackers, watch them play. We enjoy ourselves as well as our families on those holidays, and that is what makes them special. But for the fact that this man fled from confinement from a sentence of imprisonment, we wouldn't be here. William David Robinson would have had Thanksgiving dinner with his family last year.
 "MR. WARREN: Your Honor, we object to that, and move to strike it, and request you to instruct the jury to disregard this improper argument.
 "DISTRICT ATTORNEY HEDGSPETH: Your Honor, I think as far as this aggravating circumstance of custody.
"THE COURT: Motion is denied." (R. 1751-52).
In Brooks v. Kemp, 762 F.2d 1383 (11th Cir. 1985), vacatedand remanded on other grounds, 478 U.S. 1016, 106 S.Ct. 3325,92 L.Ed.2d 732 (1986), reinstated on remand, 809 F.2d 700 (11th Cir.), cert. denied, 483 U.S. 1010, 107 S.Ct. 3240,97 L.Ed.2d 744 (1987), the prosecutor made a similar statement to the one made by the prosecutor in the case at bar. In that case, "the prosecutor reminded the jury of the [victim's family's] tragedy and noted that 'next week when it's Thanksgiving and they are sitting around the table, [the victim] won't be there, and never will be there again." The Eleventh Circuit found that the prosecutor's remark was not improper and commented: "This true statement was no more than a compelling statement of the victim's death and its significance, relevant to the retributive function of the death penalty." Brooks,762 F.2d at 1410. We must agree and do not believe that the *Page 132 
prosecutor's remark in this instance was improper.
C
 "DISTRICT ATTORNEY HEDGSPETH: Now, Mrs. Warren mentioned something about if you found these mitigating circumstances outweighed the aggravating, you know, that he'd be put in the penitentiary for the rest of his life, and he wouldn't be in society anymore. Of course, Mrs. Warren is making the assumption that he won't escape. I want you to consider that.
 "MR. WARREN: Your Honor, we move to strike that comment.
 "DISTRICT ATTORNEY HEDGSPETH: It's just a reply in kind, Your Honor.
 "THE COURT: I deny the motion to strike." (R. 1748-1749).
Certainly the district attorney's comment in this instance was a reply in kind to defense counsel's argument. Furthermore, the jury was fully aware that the appellant was an escapee at the time he committed the capital offense in question. This argument was fully supported by the evidence and was not intended to inflame the jury. The motion to strike was properly denied.
D
 "Ladies and gentlemen, Mr. Holladay's father testified about the interview that he gave Steve Joiner with the Post Herald, and I want to read that to you one more time what he said.
 "(Reading) Glenn was a good little kid, but somewhere along the way he just got mean.
 "And I asked him, that was Glenn's own chosing, wasn't it, and what did he say? Yes, it was.
 "Kind of analogize that statement: Glenn was a child to a movie I saw when I was little. I think a lot saw and probably took their kids, something to see: Ole Yellow, when that movie was made.
 "If you remember, Ole Yellow was just an ole curr (sic) yellow dog that befriended a frontier family. Looked after those kids, played with them, defended them, fended off any danger that tried to get them.
 "I kind of look at Glenn like I did Ole Yellow, until the day he ran into — what was it, a bear or wolf, or something — Ole Yellow, although he ran him off, he got mangled pretty bad. During the course of that they found out that that animal that he run off had rabies. Ole Yellow went mad.
 "If you will remember, the little boy took his daddy's gun and went out and shot his dog.
 "Glenn Holladay now is just like Ole Yellow with rabies. And it's not easy to do, I know. Because almost eleven years ago I stood right here with Jack Floyd where Kathy and Howard are, and begged for a man's life. A jury just like you. And it is not easy. But when you got something that has got rabies you don't have any choice, you've got to kill it. And this rabid dog needs to be put out of our community —
 "MR. WARREN: Your Honor, we object again, and move to strike. Improper argument.
"THE COURT: It's denied." (R. 1753-55).
We believe the prosecutor's analogy to "Ole Yellow" was an illustration to the jury of the future dangerousness of the appellant. The appellant's potential dangerousness was clearly supported by the evidence and the appellant's own father's statement that "somewhere along the way he [the appellant] just got mean." The argument pointed out the fact that, although no one wishes to take the life of another person, it sometimes is necessary when the person poses a threat to society. We believe this argument was proper. See Davis v. Kemp, 829 F.2d 1522
(11th Cir. 1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1099,99 L.Ed.2d 262 (1988).
We must note that, even if we had found any of the above-quoted portions of the prosecutor's argument to be improper, we do not believe that such might have unduly influenced the jury in arriving at its verdict of the death penalty. There was overwhelming *Page 133 
evidence of this appellant's guilt of this offense and the aggravating circumstances in this case were clearly supported by the record. Thus, we find no error here.
 V
This court must, as required by § 13A-5-53, Code of Alabama 1975, review the propriety of the appellant's death sentence and examine the record for any errors adversely affecting his conviction. After our careful and thorough review of this record, we find the death sentence was proper and conclude there were no errors which adversely affected the appellant's rights. See Beck v. State, 396 So.2d 645 (Ala. 1980); also Rule 45A, A.R.A.P.
The trial court found the existence of two aggravating circumstances in this case: 1) the capital offense was committed while the appellant was under sentence of imprisonment (§ 13A-5-49(1)) and 2) the appellant had previously been convicted of felonies involving the use or threat of violence to the person (§ 13A-5-49(2)). These two aggravating circumstances are clearly supported by this record.
The trial court did not find the existence of any statutory mitigating circumstances. However, the trial judge did consider several non-statutory mitigating circumstances (i.e., "the defendant's deprived childhood, his neglect and abuse suffered as a child, his slight retardation and his lack of formal education"). (R. 128). The trial court's sentencing order is attached to this opinion as Appendix A.
We find that the appellant's sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor. Our independent weighing of the aggravating and mitigating circumstances convinces us that death is the proper sentence in this case.
The appellant's sentence of death is not disproportionate to the penalty imposed in similar cases, considering this crime and this appellant. See Jones v. State, 403 So.2d 1
(Ala.Crim.App. 1981), aff'd on return from remand, 520 So.2d 543
(Ala.Crim.App. 1984), aff'd, Ex parte Jones, 520 So.2d 553 (Ala. 1988); Tomlin v. State, 443 So.2d 47 (Ala.Crim.App. 1979),aff'd, 443 So.2d 59 (Ala. 1983), cert. denied, 466 U.S. 954,104 S.Ct. 2160, 80 L.Ed.2d 545 (1984), aff'd on return fromremand, 516 So.2d 790 (Ala.Crim.App. 1986), aff'd,516 So.2d 797 (Ala. 1987); Tarver v. State, 500 So.2d 1232
(Ala.Crim.App. 1986), aff'd, 500 So.2d 1256 (Ala.), cert. denied,482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987).
This court has carefully searched this record for plain error and we find none. The trial court's judgment of conviction and sentence of death are in all respects proper. The judgment of the trial court is therefore due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, P.J., in result only.
APPENDIX A
IN THE CIRCUIT COURT OF
ETOWAH COUNTY
ALABAMA
STATE OF ALABAMA,
VS.
GLENN WILLIAM HOLLADAY.
CASE NO. CC-86-1057-DWS
JUDGMENT OF THE COURT
In compliance with Title 13A-5-47, Code of Alabama, 1975, as amended, the Court finds that on August 25, 1986, Rebecca Ledbetter Holladay, William David Robinson and Larry Denson Thomas, Jr., were intentionally murdered by the Defendant, Glenn William Holladay by one act or pursuant to one scheme or course of conduct.
Following a finding of guilty by the jury, the Defendant and the State were given the opportunity to present evidence and make further arguments concerning any mitigating or statutory aggravating circumstances to be considered by the jury in its recommendation of sentence to the Court. Following deliberation of the jury, an advisory sentence verdict of death was returned by the jury. *Page 134 
On July 24, 1987, the Defendant in open Court with his attorney of record appeared for sentencing.
Upon consideration of the evidence presented at the trial of the case and at the sentencing hearing, the Court finds the facts as follows:
In the early morning hours of August 25, 1986, Glenn William Holladay, while an escapee from the Cherokee County Jail, Centre, Alabama, positioned himself outside the mobile home of his former wife, Rebecca Ledbetter Holladay. The mobile home located on Pope Road, Gadsden, Alabama, was the residence of Rebecca Ledbetter Holladay and her son, Shea Ledbetter, age 12. The victim David Robinson, who was the boyfriend of Rebecca Holladay, was present in the mobile home as well as Rebecca Holladay's sister Katrina Ledbetter and the victim Larry Denson Thomas, Jr., a friend of Shea Ledbetter. Larry Thomas, Jr., who was spending the night with his friend, Shea Ledbetter, left the mobile home to return to his own home a short distance away for the purpose of getting something to eat before returning to the Holladay trailer to go to bed. As Larry Thomas, Jr. left the Holladay trailer and proceeded across the yard, Glenn William Holladay shot Thomas and immediately forced entry into the front door of the trailer where he found Katrina preparing for bed. Holladay shoved Katrina aside and proceeded down the hallway of the trailer to Rebecca Holladay's bedroom. As he proceeded down the hallway, Katrina shouted a warning to her sister that Holladay was present. As Holladay proceeded down the hallway, he passed the bedroom door of Shea Ledbetter and attempted to cut on the lights in the bedroom. Holladay was not able to cut on the lights in Shea's bedroom but Shea was able to clearly recognize Holladay as he moved down the hallway. Holladay next entered Rebecca Holladay's bedroom where he shot David Robinson in the chest and arm. Rebecca Holladay moved to a corner of the room and crouched down where Holladay shot her in the back of the head with the bullet entering the back of her head and exiting through her right breast. As Holladay was on his way to Rebecca Holladay's bedroom, Katrina and Shea Ledbetter fled the trailer and ran to the Thomas home nearby to summons help. Larry Thomas, Jr. and David Robinson died at the scene and Rebecca Holladay died shortly after arriving at a local hospital.
From the evidence presented at the trial and at the sentence hearing, the Court finds that the Defendant, Glenn William Holladay, did intentionally murder two or more persons, being Rebecca Ledbetter Holladay, William David Robinson and Larry Denson Thomas, Jr., by one act or pursuant to one scheme or course of conduct. Title 13A-5-40(10), Code of Alabama, 1975, as amended. The Court further finds as statutory aggravating circumstances that the intentional murders were committed while the Defendant was under sentence of imprisonment and that the Defendant had previously been convicted of felonies involving the use or threat of violence to the person.
The Court in considering and weighing mitigating circumstances, finds that the Defendant's family history would reasonably be expected to contribute to his criminal conduct and that as a child the Defendant was abused and neglected. The Court further finds that the Defendant is slightly mentally retarded and received no formal education beyond the sixth grade. The Court finds no evidence that the Defendant was acting under the influence of extreme mental or emotional disturbance or that he lacked the capacity to appreciate the criminality of his conduct or to conform to the requirements of the law. The Court further finds no evidence that the victims participated in the Defendant's conduct or consented to it or that the Defendant was an accomplice to another who committed the offense and that his participation was relatively minor. The Court further finds no evidence that the Defendant acted under duress or under the substantial domination of another person. The Court finds that the Defendant was 37 years of age at the time of the offense and does not consider his age as mitigating. The Court specifically finds as mitigating circumstances, the Defendant's deprived childhood, his neglect *Page 135 
and abuse suffered as a child, his slight retardation and his lack of formal education.
The Court finds from a consideration of the evidence taken on the trial of the case and at the sentencing hearing that the aggravating circumstances listed in Section 13A-5-49(1) and Section 13A-5-49(2) exist in this case and are sufficient to support the sentence of death. It is the opinion of the Court that the mitigating circumstances heretofore enumerated are insufficient to outweigh the aggravating circumstances. The Court therefore, finds that the punishment of this Defendant should be fixed by the Court of death.
And on this 24th day of July, 1987, with said Defendant being now in open Court and being asked by the Court if he has anything to say why the judgment of the Court and the sentence of the law should not be pronounced upon him, Defendant says nothing.
It is therefore ORDERED AND ADJUDGED BY THE COURT that the Defendant be and hereby is sentenced to DEATH in the electric chair and said sentence to be carried out in the manner and at such time and place as may be prescribed by law. The Defendant is further assessed the sum of Ten Thousand and No/100th ($10,000.00) Dollars as a victim compensation assessment under Section 15-23-17(b), Code of Alabama.
It is further ORDERED BY THE COURT that the Clerk and the Court Reporter prepare a transcript of these proceedings and forward same to the Alabama Court of Criminal Appeals.
It is further ORDERED BY THE COURT that a copy hereof be furnished by the Clerk to the Defendant and his attorneys.
DONE AND ORDERED THIS THE 27th DAY OF July, 1987.
Donald W. Stewart
DONALD W. STEWART,
CIRCUIT JUDGE